**Danny Ruiz SUBIA, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 08–91–00039–CR.**

Court of Appeals of Texas, El Paso.

July 15, 1992.

Rehearing Overruled Aug. 19, 1992.

Robert Leahey, Odessa, for appellant.

Gary Garrison, Dist. Atty., Odessa, for appellee, State.

Before KOEHLER, BARAJAS and LARSEN, JJ.

## OPINION

BARAJAS, Justice.

This is an appeal from a conviction for the offense of burglary of a vehicle—habitualized by the finding of two prior felony convictions. The jury assessed punishment at 50 years' confinement in the Institutional Division of the Texas Department of Criminal Justice. In two points of error, Appellant attacks the judgment of conviction. We reverse.

## I. SUMMARY OF THE EVIDENCE

On May 31, 1990, a report was filed with the Odessa Police Department wherein it was alleged that a van had been burglarized and a bicycle removed from inside the van. The following morning, Detective Manuel Fuentes of the Odessa Police Department received a Crime Stopper's tip that a person living at the Western Crest Apartments, 2051 Coahuila Street, apartment 28, was in possession of a stolen bicycle. Detective Fuentes was advised by the apartment manager that the apartment in question was actually apartment 24. The manager gave Detective Fuentes Appellant's name, date of birth and further advised him that she had seen Appellant riding a black bicycle that very morning. Detective Fuentes proceeded to apartment 24 and knocked on the door, getting no response. He looked through the window into the apartment, but failed to detect anything unusual. Upon leaving the apartment landing, Detective Fuentes set up surveillance of the apartment for a period of approximately two hours, after which surveillance was discontinued.

Detective Fuentes stated that upon his return to the apartment complex at approximately 3:00 in the afternoon, he detected a bicycle that matched the description of the bicycle earlier reported stolen. The bicycle was located in front of Appellant's apartment. Detective Fuentes stated that the door to Appellant's apartment was open, allowing him to see Appellant resting on a couch. He further stated that he proceeded to Appellant's apartment, knocked on the door and saw Appellant sit up on the couch. While standing at the door, Detective Fuentes asked Appellant if he was the owner of the bicycle located outside his apartment. Appellant initially stated that the bicycle was not his but later admitted that it was his bicycle, having bought it from another individual. Detective Fuentes related that as he was talking to the Appellant from the doorway, Appellant was standing immediately behind a coffee table. On a coffee table he noticed a twelve inch crescent wrench, a combination cable lock that had been cut, a pair of wire cutters, some bicycle parts, a bottle holder for a bicycle and some pliers. Detective Fuentes, stating that he had previous knowledge of Appellant's reputation for violence and fearing Appellant might utilize the wrench as a weapon, entered the apartment and handcuffed the Appellant "for security reasons." Detective Fuentes further stated that once he placed the handcuffs on Appellant, Appellant was effectively under arrest and not free to leave. He then proceeded to call the complainants to come and identify the allegedly stolen bicycle. It was only after the bicycle was

properly identified that Appellant was informed that he was under arrest.

Detective Fuentes asserts that the Appellant asked the officers to secure his apartment.[1] He further stated that he went into Appellant's bedroom to secure a window and while there he noticed a "lock jock" on the dresser.[2] Detective Fuentes conceded that Appellant never invited him into the apartment and that the search was a warrantless search. Detective Fuentes stated on cross-examination that the reason he did not attempt to obtain a warrant was that the apartment manager had advised him that she was in the process of evicting Appellant for failure to pay the rent, and thus, he feared the Appellant would abscond with the evidence.[3]

## II. DISCUSSION

In Point of Error No. One, the Appellant asserts that the court erred in failing to suppress illegally seized evidence.[4]

■ On a motion to suppress evidence, the trial judge is the sole and exclusive trier of fact and judge of credibility of witnesses including the weight to be given their testimony. *Romero v. State*, 800 S.W.2d 539, 543 (Tex.Crim.App.1990). The appellate court does not engage in its own factual review but decides whether or not the trial judge's findings of fact are supported by the record. If the findings are supported by the record, we are not at liberty to disturb them. Thus, on review, this Court will only address the question of whether the trial court improperly applied the law to the facts. *Romero*, 800 S.W.2d at 543. Should the trial judge's determination be correct on any theory of law applicable to the case, it will be sustained. *Id.* at 543.

■ In general, a law enforcement officer should always obtain an arrest warrant when possible. *Randall v. State*, 656 S.W.2d 487, 490 (Tex.Crim.App.1983). The limited circumstances where warrantless arrests are permitted are exclusively authorized by statute. Specifically, before a warrantless arrest is authorized under Texas law, the circumstances must fall within one of the following statutory exceptions to the procurement of an arrest warrant:

(1) Offenses committed within view; Tex.Code Crim.Pro.Ann. art. 14.01 (Vernon 1977);

(2) offenses committed within view of magistrates; Tex.Code Crim.Pro.Ann. art. 14.02 (Vernon 1977);

(3) arrests of persons found in suspicious places under suspicious circumstances; Tex.Code Crim.Pro.Ann. art. 14.03(a)(1) (Vernon Supp.1992);

(4) arrests of persons when there is probable cause to believe the person has committed an assault resulting in bodily injury to another person and there is danger of further bodily injury to that person; Tex.Code Crim.Pro.Ann. art. 14.-03(a)(2) (Vernon Supp.1992);

(5) arrests of persons when there is probable cause to believe the person has violated a protective order; Tex.Code Crim.Pro.Ann. arts. 14.03(a)(3) and 14.-03(b) (Vernon Supp.1992);

---

1. At the hearing on Appellant's motion to suppress evidence, Appellant emphatically denied that he ever asked the officers to secure his apartment.

2. A "lock jock" is a metal device used to unlock the doors of motor vehicles.

3. Detective Fuentes, in his testimony, conceded that he did not know what stage the eviction proceedings had reached nor did he know when Appellant would actually be evicted.

4. On review, Appellant contends that his alleged consent to enter the bedroom was obtained after an illegal entry and an illegal, warrantless arrest of the Appellant. The State maintains that the Appellant has waived this issue on appeal in that the sole contention raised at the hearing on the motion to suppress evidence centered around the validity of the consent and the subsequent plain view search of the bedroom. However, we note that Appellant's motion to suppress evidence asserted that all items seized from the Appellant, including the "lock jock," should be suppressed as the seizure was the result of **an illegal detention, arrest** and search of the defendant, in violation of the defendant's constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution, Article I, Section 9 of the Texas Constitution and Article 38.23 of the Texas Code of Criminal Procedure. Accordingly, we find that the Appellant has not waived the issues of the warrantless arrest and search.

(6) arrests of persons when there is probable cause to believe the person has committed an assault resulting in bodily injury to a member of the person's family or household; Tex.Code Crim.Pro.Ann. art. 14.03(a)(4) (Vernon Supp.1992);

(7) arrests of persons outside the peace officer's jurisdiction, who commit felonies or violations of Title 9, Chapter 42, Penal Code; Tex.Code Crim.Pro.Ann. art. 14.03(d) (Vernon Supp.1992);

(8) when a felony has been committed and the defendant is about to escape; Tex.Code Crim.Pro.Ann. art. 14.03 (Vernon 1977);

(9) seizing a suspect and personal property to prevent the consequences of theft; Tex.Code Crim.Pro.Ann. art. 18.16 (Vernon Supp.1992); and

(10) arrest by a peace officer from another jurisdiction, commissioned and authorized by another state to make arrests for felonies, in fresh pursuit of a person who has committed a felony offense. Tex.Code Crim.Pro.Ann. art. 14.05(a) (Vernon Supp.1992).

While the above exceptions to effecting an arrest without a warrant have been statutorily enacted, Tex.Code Crim.Pro.Ann. art. 14.05 (Vernon Supp.1992) has been enacted to provide restrictions on warrantless arrests that take place in a residence. Article 14.05 provides as follows:

In each case enumerated where arrests may be lawfully made without warrant, the officer or person making the arrest is justified in adopting all the measures which he might adopt in cases of arrest under warrant, **except that an officer making an arrest without a warrant may not enter a residence to make the arrest unless:** [Emphasis added].

(1) **a person who resides in the residence consents to the entry; or**

(2) **exigent circumstances require that the officer making the arrest enter the residence without the consent of a resident or without a warrant.**[5] [Emphasis added].

█ In the instant case, it is undisputed that Appellant's arrest was made without a warrant at his place of residence. Accordingly, Article 14.05 is specifically controlling, rather than the general statutory exceptions which authorize a warrantless arrest.

The record establishes that Detective Fuentes did not have consent to initially enter the apartment. To the contrary, Detective Fuentes stated that he entered Appellant's apartment and handcuffed him "for security reasons." Therefore, for the arrest to be valid, there must have been exigent circumstances allowing his entry into Appellant's residence and Appellant's eventual arrest.

The only possible exigent circumstance allowing Detective Fuentes' entry would be his rather vague assertion that the apartment manager was in the process of evicting the Appellant which would result in the disappearance of the Appellant and the bicycle. However, Detective Fuentes stated that he did not know when the eviction would occur, if the proceedings had been initiated or, if they had, at what stage they had progressed. Under the facts of the instant case, it is difficult to perceive how knowledge of a pending eviction arises to the immediacy of exigent circumstances. Accordingly, in applying the clear facts of the instant case to the simple standards of Article 14.05, we find that the Appellant's arrest was an illegal warrantless arrest. However, this holding does not end the inquiry. It must be determined if the Appellant's consent to search the bedroom by asking the officers to secure the apartment sanctioned the finding of the "lock jock" on the bedroom dresser.

█ The fact that an individual is under arrest does not, in and of itself, prevent a free and voluntary consent to search. *Juarez v. State,* 758 S.W.2d 772, 775 (Tex. Crim.App.1988). Further, notwithstanding an illegal arrest, consent to search, freely

5. Article 14.05 was amended effective August 31, 1987 to include the language emphasized above. It is apparent that the legislature intended to place additional restrictions to arrests without warrants which were contingent upon the entering of residences by specifically requiring consent or exigent circumstances.

and voluntarily given, remains one of the recognized exceptions to the requirement of both a warrant and probable cause for a valid search. However, in addition to proving voluntary consent to search, the State must also establish the existence of intervening factors that prove the consent was sufficiently attenuated from an illegal stop or arrest. *Id.* at 777. To determine if there is sufficient attenuation from the illegal police conduct, the reviewing court must consider (1) whether *Miranda* warnings were given; (2) the temporal proximity of the arrest and confession; [6] (3) the presence of intervening circumstances; and (4) the purpose and flagrancy of the official misconduct. *Juarez,* 758 S.W.2d at 780.

In the present case, the record fails to establish whether or not *Miranda* warnings were given. There is also no indication of the time lapse between the arrest and the consent. Further, the State has failed to demonstrate any intervening circumstances that would serve to attenuate the taint of the illegal arrest. In fact, Appellant's consent was given in a form that was directly necessitated by the very fact of his arrest—a request to secure the apartment due to his arrest. Consequently, we find that the State has failed to meet its burden of demonstrating the validity of Appellant's consent.

As the impact on the jury in allowing the introduction of a device to open car doors in a case concerning the burglary of a vehicle is evident, we find that the court erred in failing to grant the Appellant's motion to suppress the complained-of evidence. Point of Error No. One is sustained.

In light of the foregoing discussion, we find it unnecessary to respond to Point of Error No. Two.

The judgment of the trial court is reversed and the cause remanded for new trial.

---

**6.** In this case, consent to search rather than the voluntariness of a *confession* is the central issue.