Lorenzo Jose RIVAS, Appellant,

v.

The STATE of Texas, Appellee.

No. 08–92–00419–CR.

Court of Appeals of Texas,
El Paso.

April 21, 1993.

Alejandro Soto, El Paso, for appellant.

Jaime E. Esparza, Dist. Atty., El Paso, for state/appellee.

Before OSBORN, C.J., and BARAJAS and LARSEN, JJ.

## OPINION

BARAJAS, Justice.

This is an appeal from a conviction for the offense of theft of property of the value $750 or more but less than $20,000— habitualized by the allegations of two prior felony convictions. Trial was to the court. Upon a finding of guilty, the court assessed punishment at 30 years' imprisonment. We reverse the judgment of the trial court.

## I. SUMMARY OF THE EVIDENCE

The record shows that Carlos Molinar, a deputy with the El Paso County Sheriff's Department, testified that on January 9, 1992 at 1:35 p.m. he was traveling east on Interstate Highway 10 in El Paso County when he saw Appellant and a female passenger in a compact car bearing Louisiana license plates. He stated that as he passed Appellant's vehicle, he attempted to look in and observed that Appellant was acting nervous due to the deputy's presence. Deputy Molinar backed off and called in the registration of the vehicle. Deputy Molinar, upon being advised that the license plates were registered to a different vehicle, stopped the car.

Appellant was unable to produce a driver's license, and upon request, identified himself as Roberto Hernandez. In the course of his conversation with Deputy Molinar, Appellant related that in the past week, he had spoken with a deputy in the sheriff's department by the name of Ron Nanos. Deputy Molinar called Deputy Nanos on his police radio and asked that he come to the location.[1] Appellant was issued citations for no driver's license and fictitious vehicle registration. After requesting a wrecker, Deputy Molinar commenced an inventory of the vehicle; however, he was unable to complete the inventory because the locking mechanism to the trunk was missing and Appellant informed him he had no access. Upon completion of the partial inventory, Deputy Molinar advised Appellant that he was free to remove whatever valuables he had out of the vehicle. Appellant took several items from the vehicle and boarded the cab of the wrecker, along with his female companion, for a ride. Once the wrecker driver took custody of the vehicle, Deputy Molinar left the scene. No arrests were made at the scene by Deputy Molinar.

Immediately upon leaving the scene, Deputy Molinar was advised by Deputy Nanos via police radio, that Appellant was seen going into the trunk of the vehicle and

---

**1.** Deputy Molinar testified that Deputy Nanos was working in an undercover capacity and that during his conversation with Appellant on the roadway, Deputy Nanos had parked in the west-bound lanes of Interstate Highway 10 parallel to the location of the stop. Deputy Nanos notified Deputy Molinar that he was unable to identify Appellant.

pulling out a large bag. The bag was placed in the cab of the wrecker. Deputy Molinar testified that upon learning this, he proceeded to stop the wrecker and its passengers. The stated purpose in stopping the wrecker was to inventory the bag and note its contents on the impound slip. Deputy Molinar testified that as Appellant opened the passenger door, he directed Appellant to stand away from him and further directed Appellant's female companion to get out of the wrecker. Deputy Molinar saw the bag on the passenger-side floorboard of the wrecker. He seized the bag and placed it next to the vehicle. The top portion of the bag revealed a leather coat with a sale tag.[2]

Deputy Molinar stated that neither Appellant nor his female companion were under arrest at the time that the bag was retrieved from the cab of the wrecker. Further, he testified that the sheriff's department policy required that vehicles be inventoried in order to protect the department from any liability that may result as a consequence of the impoundment.

Deputy Nanos testified that he was called to the scene of the stop to conduct a "rollby" to see if he could identify Appellant and his passenger who were stopped. He stated that he viewed them from a distance of approximately seventy-five yards with the aid of binoculars, but as both Appellant and his companion were wearing sunglasses, he was unable to make a proper identification. He further stated that as he saw Deputy Molinar leave the scene, he saw Appellant walk up to his vehicle, open its trunk and pull out a large bag. Appellant and his companion then got into the cab of the wrecker with the large bag.

Deputy Nanos further testified that he radioed Deputy Molinar to advise him that Appellant had removed a bag from the trunk of the impounded vehicle. Suspecting that the bag contained drugs, Deputy Nanos directed Deputy Molinar to stop the wrecker and its passengers. When Deputy Nanos arrived at the location where Deputy Molinar stopped the wrecker, Appellant and his companion were standing outside the truck. Deputy Nanos testified that he recognized Appellant and asked for his name. Appellant gave a name different from the name he had earlier given Deputy Molinar. Appellant was then placed under arrest for failure to identify himself to a police officer.[3] Deputy Nanos further stated that he placed Appellant under arrest at approximately the same time that Deputy Molinar seized the bag. A records check revealed that Appellant was wanted for violation of his conditions of parole.

At trial, Appellant testified on his own behalf. On direct examination, Appellant admitted to possessing the coats which the deputies found as a result of the stop, search and seizure. He contended however, that he was an innocent purchaser of the coats at a swap meet in downtown El Paso.

## II. DISCUSSION

In Point of Error No. One, Appellant asserts that the trial court erred by permitting the introduction of the coats as evidence insofar as the bag and its contents were obtained as a result of an illegal search.

The State contends it is unnecessary to determine the legality of the search and seizure. The State cites *Murphy v. State*, 640 S.W.2d 297, 299–300 (Tex.Crim.App. 1982) and other authority for the proposition that under normal circumstances, when an accused testifies on direct examination that he possessed the fruits of a

---

**2.** The leather coats were subsequently linked to the burglary of a clothing store. The burglary occurred on January 5, 1992. The Appellant was seen in the store on January 2, 1992.

**3.** Tex.Penal Code Ann. § 38.02(b) (Vernon Supp.1993) provides:

A person commits an offense if he reports or gives a false or fictitious name, residence address, or date of birth to a peace officer who has:

(1) lawfully arrested the person;

(2) lawfully detained the person;

(3) requested the information from a person that the peace officer has good cause to believe is a witness to a criminal offense.

search, any contention concerning the legality of the search is waived. A corollary to this rule, often referred to as the rule of curative admissibility, provides that the harmful effect of improperly admitted evidence is not cured by the introduction of rebuttal evidence which may be designed to meet, destroy or explain the improper evidence. *Howard v. State*, 599 S.W.2d 597, 605 (Tex.Crim.App.1979) (Opinion on State's Motion for Rehearing). In *Thomas v. State*, 572 S.W.2d 507, 516 (Tex.Crim. App.1978), the Court of Criminal Appeals altered the rule on curative admissibility in light of *Harrison v. United States*, 392 U.S. 219, 88 S.Ct. 2008, 20 L.Ed.2d 1047 (1968). In *Thomas,* the Court held that the harmful effect of improperly admitted evidence which is obtained by illegal police practices is not cured when an accused gives testimony on direct examination which establishes the same or similar facts unless the State can demonstrate that its illegal action in obtaining and introducing the evidence did not impel the defendant's testimony. *Thomas,* 572 S.W.2d at 516. *Bush v. State*, 697 S.W.2d 397, 404 (Tex. Crim.App.1985), *Sherlock v. State*, 632 S.W.2d 604, 606 (Tex.Crim.App.1982), *Benavides v. State*, 600 S.W.2d 809, 812 (Tex. Crim.App.1980).

■ In determining whether the State has met its burden under *Thomas,* the following factors are relevant:

(1) evidence that defendant's counsel would not have called his client to the stand but for the overruling of his objection to illegally seized evidence;

(2) even if he would have called the defendant to the stand, evidence that his client would have testified in the same manner but for the introduction of that evidence;

(3) whether the State introduced other evidence of guilt, and the strength of that evidence; and

(4) whether there is other evidence, aside from the evidence objected to, that would have induced the defendant to testify in the same manner.

*Sherlock,* 632 S.W.2d at 607.

■ In the present case, the evidence which establishes Appellant's possession of the stolen coats is central and dispositive of the charges against him. The record demonstrates that while there was some evidence placing Appellant in the clothing store from where the coats were taken several days prior to the burglary, that evidence, standing alone, has little weight. In light of the state of the record, we cannot say that there is other evidence which would have induced Appellant to testify in the same or similar manner. Consequently, we find that the State has failed to meet its burden under *Thomas* and accordingly hold that Appellant has not waived his objection and we will address his complaint regarding the search and seizure of the bag containing the coats.

■ On a motion to suppress evidence, the trial judge is the sole and exclusive trier of fact and judge of the credibility of witnesses including the weight to be given their testimony. *Romero v. State*, 800 S.W.2d 539, 543 (Tex.Crim.App.1990); *Subia v. State*, 836 S.W.2d 711, 713 (Tex. App.—El Paso 1992, no pet.); *State v. Hopper,* 842 S.W.2d 817, 819 (Tex.App.—El Paso 1992, no pet.). The appellate court does not engage in its own factual review but decides whether or not the trial judge's findings of fact are supported by the record. If the findings are supported by the record, we are not at liberty to disturb them. Thus, on review, this Court will only address the question of whether the trial court improperly applied the law to the facts. *Romero,* 800 S.W.2d at 543. Should the trial judge's determination be correct on any theory of law applicable to the case, it will be sustained. *Id.* at 543.

■ In the present case, Appellant contends that the search of the wrecker cab in which he was riding, as well as the subsequent seizure of the bag and its contents, was neither a valid inventory search nor an example of the plain view exception to the necessity of obtaining a search warrant. Without responding to these contentions, we find that the search and seizure was valid as a search incident to a valid custodial arrest.

In *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), the United States Supreme Court held that a search incident to a valid custodial arrest of individuals who are in, or recently have been in, an automobile extends to the entire passenger compartment and all containers, open or closed found therein. The Court of Criminal Appeals utilized this holding in *Osban v. State*, 726 S.W.2d 107, 111 (Tex. Crim.App.1986) and in *Williams v. State*, 726 S.W.2d 99, 101 (Tex.Crim.App.1986). In *Williams*, the Court stated that the fact the search incident to the arrest precedes the formal custodial arrest by a few moments is of no consequence. *Williams*, 726 S.W.2d at 101.

We find that the facts of this case fall squarely within the rule of *Belton* and that the court did not err in denying Appellant's motion to suppress with regard to this contention. Point of Error No. One is overruled.

In Point of Error No. Two, Appellant contends that the trial court erred in admitting evidence obtained as the result of an illegal seizure of his person. Specifically, Appellant complains of the stop of the wrecker and the subsequent seizure of his person.

■■■■■ An exception to the warrant requirement, circumstances short of probable cause may justify the temporary investigative detention; however, a law enforcement officer must possess specific articulable facts which amount to more than mere hunch or suspicion that, combined with personal experience and knowledge and any logical inferences, create the reasonable suspicion that criminal activity is afoot. *State v. Hopper*, 842 S.W.2d at 820; see also *Johnson v. State*, 658 S.W.2d 623, 626 (Tex.Crim.App.1983). An occupant of an automobile is as subject to this detention as a pedestrian. *Id.*, at 626. Any detention based on a hunch is illegal and there must be a reasonable suspicion by the officer that there exists or existed some activity out of the ordinary, and there must be some suggestion to connect the detained person with the unusual activity as well as some indication that the activity is related to crime. *Id.* Where the events are as consistent with innocent activity as with criminal activity, any detention based on those events is unlawful. *Id.*

■■■■■ In the case on review, it is clear that the deputies had their suspicions; however, the activity actually observed is as consistent with innocent activity as with criminal activity. While Deputy Nanos stated that he had suspicions that the bag contained drugs, we find that the State, in its examination of Deputy Nanos, wholly failed to have him specifically articulate those reasons for this suspicion. Moreover, the activity of Appellant in removing the bag from the trunk of the vehicle he was driving, even after stating that he had no access due to the failure of the trunk's locking device, does not appear to be criminal in nature given the fact that he was specifically told by Deputy Molinar that he could remove any valuables from the vehicle. As we are unable to perceive any other ground to uphold the court's ruling, we find that the court erred in denying Appellant's motion to suppress with regard to the legality of the stop. Further, we are unable to determine beyond a reasonable doubt that the error makes any contribution to the conviction or to the punishment. *See Harris v. State*, 790 S.W.2d 568 (Tex. Crim.App.1989); Tex.R.App.P. 81(b)(2). Accordingly, Point of Error No. Two is sustained.

Having sustained Appellant's second point of error, the judgment of the trial court is reversed and the cause is remanded for new trial.