**Mack Henry GAINES, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 08–93–00297–CR.

Court of Appeals of Texas,
El Paso.

Oct. 6, 1994.

Mark Ellis, Houston, for appellant.

John B. Holmes, Dist. Atty. of Harris County, Houston, for State.

Before KOEHLER, LARSON and McCOLLUM, JJ.

## OPINION

KOEHLER, Justice.

Mack Henry Gaines, Appellant, brings this appeal from an order denying his motion to suppress, following which he waived his right to a jury trial and pled guilty to the offense of burglary in accordance with a plea bargain. Punishment was assessed at imprisonment for a term of 25 years.

In this appeal, Appellant contends that the trial court erred in denying his motion to suppress because the evidence failed to show that the officer arresting without a warrant had probable cause to believe that Appellant had committed a felony. Appellant, characterizing the initial stop and detention as an arrest, argues in three points of error that the arresting officer lacked probable cause for his arrest and therefore the out-of-court identification, his statement and other evidence supporting his conviction were fruits of

an illegal search and seizure and should have been inadmissible. We affirm.

Following indictment and prior to the date set for trial, Appellant filed his motion to suppress all evidence obtained as a result of the "illegal and unconstitutional search and seizure" which occurred when the car in which he was a passenger was stopped and he and the driver "were illegally arrested without authority, without probable cause, and without an arrest warrant." After hearing the testimony from both state and defense witnesses, the court denied the motion.

Appellant, relying on *Amores v. State*, 816 S.W.2d 407 (Tex.Crim.App.1991) and *Hoag v. State*, 728 S.W.2d 375 (Tex.Crim.App.1987), contends that he "was ordered out of the car at gunpoint by a uniformed deputy sheriff, searched, handcuffed and placed in a patrol car" and that because he was not free to leave and his "liberty of movement was clearly restrained from the moment the car was stopped ... he was under arrest from the beginning." We disagree with his interpretation of the facts and his conclusion.

## RELEVANT FACTS

On April 29, 1993 at around 7:15 a.m., Michelle Boudreaux arrived at her office building in Houston. Finding that the door to her office had been broken open, she looked through a window into her office and observed two black men, standing in a brightly lit storage room, stuffing items into a bag. Realizing that her office was being burglarized, she went downstairs to call the police. On her way to call the police, Boudreaux encountered James Scott, a person who worked on another floor, and told him that there was a burglary in progress in her office.

While Boudreaux was calling the police, Scott witnessed two black men walk out of the building carrying a canvas bag and drive off in a yellow Honda Civic automobile. In her 911 emergency call, Boudreaux informed the police of her name, the address of the office building, and that a burglary had occurred, involving two black men. She also relayed the information provided by Scott of what he had observed. As a result of a police radio call broadcasting the information given by Boudreaux and Scott, Deputy Sheriff Gwosdz, who was driving a patrol car in the northbound lanes of Bammel North Houston Road at approximately 7:30 that same morning, spotted an automobile and occupants matching the description headed southbound on the same road. Gwosdz immediately turned his vehicle around, pursued the Honda and pulled it over. Upon coming to a stop, Ronald Ray Busby[1], the driver of the Honda, immediately stepped out of the vehicle. The passenger slumped down in his seat. Gwosdz told Busby to remain where he was and ordered the passenger, later identified as Appellant herein, out of the Honda. Before approaching the vehicle, Gwosdz was advised in a supplemental broadcast that the suspects would be in possession of a canvas bag containing the stolen items. Neither Busby nor Appellant was able to produce a driver's license or other identification in response to Gwosdz' request. Gwosdz proceeded to arrest Busby for driving without a license and Appellant as a suspect in a burglary until he could be identified. Before arresting the two men, Gwosdz drew his gun on them. After handcuffing both men and placing them in separate patrol cars, Gwosdz went to the Honda and observed a canvas bag in plain view on its backseat. Appellant and Busby were transported back to the burglarized building where, after they had been read their rights, Scott identified them as the men he had observed leaving the building with the canvas bag. From her office window, Boudreaux also tentatively identified the two men as the ones she had seen inside her office suite. Shortly thereafter, she made a positive identification from polaroid photos taken by an officer at that time. Later at a substation, Appellant, after again being read his rights, gave a written statement to Detective William Moore of the Sheriff's Department.

## MOTION TO SUPPRESS

In a hearing on a motion to suppress, the trial judge is the sole and exclusive trier of fact and judge of credibility of wit-

---

1. Also known as Curtis Davis.

nesses including the weight to be given their testimony. *Romero v. State,* 800 S.W.2d 539, 543 (Tex.Crim.App.1990); *Cannon v. State,* 691 S.W.2d 664 (Tex.Crim.App.1985), *cert. denied,* 474 U.S. 1110, 106 S.Ct. 897, 88 L.Ed.2d 931 (1986); *State v. Wood,* 828 S.W.2d 471, 474 (Tex.App.—El Paso 1992, no pet.); *Subia v. State,* 836 S.W.2d 711 (Tex. App.—El Paso 1992, no pet.); *Edwards v. State,* 850 S.W.2d 731, 735 (Tex.App.—El Paso 1993, no pet.). In that regard, the trial court was free to believe or disbelieve the testimony of each of the State's witnesses and the Appellant. The appellate court does not engage in its own factual review but must decide whether or not the trial judge's findings of fact, express or implied, are supported by the record. If the findings are supported by the record, we are not at liberty to disturb them. Thus on review, this Court will only address the question of whether the trial court improperly applied the law to the facts. *Romero,* 800 S.W.2d at 543; *Subia,* 836 S.W.2d at 713; *Edwards,* 850 S.W.2d at 735. In the instant case, the trial court did not specify the theory on which he found the evidence to be admissible. Under this circumstance, if the trial judge's determination is correct on any theory of law applicable to the case, it will be sustained. *Romero,* 800 S.W.2d at 543; *Edwards,* 850 S.W.2d at 735. In a suppression hearing, the burden of proof is initially upon the defendant when he seeks to suppress evidence on the basis of a Fourth Amendment violation. *Russell v. State,* 717 S.W.2d 7 (Tex.Crim. App.1986); *Mattei v. State,* 455 S.W.2d 761, 765–66 (Tex.Crim.App.1970); *see also State v. Wood,* 828 S.W.2d at 474 and *Edwards,* 850 S.W.2d at 734. It is a well-recognized principle of criminal jurisprudence that there is a presumption of proper police conduct. In that regard, in order to defeat the presumption of the officer's proper conduct, the defendant must first produce evidence to establish (1) that a search or seizure occurred; (2) without a warrant; and (3) in violation of his own Fourth Amendment rights. *See Simmons v. United States,* 390 U.S. 377, 389–90, 88 S.Ct. 967, 973–74, 19 L.Ed.2d 1247 (1968); *Jones v. United States,* 362 U.S. 257, 261, 80 S.Ct. 725, 731, 4 L.Ed.2d 697 (1960). Once a defendant has met his burden of production which establishes the above, the burden then shifts to the State to prove the reasonableness of the search or seizure by a preponderance of the evidence. *Edwards,* 850 S.W.2d at 734. In this case, because the parties agree that the search and seizure occurred without a warrant, the questions are whether the initial stop and detention, the subsequent arrest and the search and seizure were reasonable under the circumstances existing at the time.

## INVESTIGATIVE DETENTION v. ARREST

Facts known by the officer which fall short of probable cause for an arrest may still justify a temporary investigation or detention because such investigation or detention is a lesser intrusion on an individual's privacy than an arrest. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Livingston v. State,* 739 S.W.2d 311, 327 (Tex.Crim.App.1987), *cert. denied,* 487 U.S. 1210, 108 S.Ct. 2858, 101 L.Ed.2d 895 (1988); *Fatemi v. State,* 558 S.W.2d 463, 465 (Tex. Crim.App.1977). In order to engage in a valid investigative detention the officer must have specific, articulable facts which, in light of his experience and personal knowledge, taken together with rational inferences from these facts, reasonably warrant intrusion into the privacy of the individual stopped for such investigation. *Glass v. State,* 681 S.W.2d 599, 601 (Tex.Crim.App.1984); *Schwartz v. State,* 635 S.W.2d 545, 547 (Tex.Crim.App. 1982); *McMillan v. State,* 609 S.W.2d 784, 786 (Tex.Crim.App.1981). If an officer has a reasonable suspicion, based on specific, articulable facts, that persons he encounters are involved in criminal activity, he may investigate by stopping the individuals in order to determine their identity, posing questions to them or detaining them briefly while attempting to obtain further information. *Delk v. State,* 855 S.W.2d 700, 710 (Tex.Crim.App. 1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 481, 126 L.Ed.2d 432 (1993); *see Mays v. State,* 726 S.W.2d 937, 944 (Tex.Crim.App. 1986); *Gearing v. State,* 685 S.W.2d 326, 328 (Tex.Crim.App.1985); *Johnson v. State,* 658 S.W.2d 623, 626 (Tex.Crim.App.1983).

A person may be temporarily detained for investigative purposes where circumstances short of probable cause at the inception of the detention exist. *Dickey v. State,* 716 S.W.2d 499, 503 n. 4 (Tex.Crim. App.1986). A police broadcast if based on reliable information furnished by an otherwise credible, known private citizen whose only contact with the police or criminal activity results from having witnessed a criminal act may be sufficient to provide an officer with probable cause to stop persons matching the description for investigatory purposes. *Esco v. State,* 668 S.W.2d 358, 360 (Tex.Crim. App.1982); *Brooks v. State,* 707 S.W.2d 703, 705 (Tex.App.—Houston [1st Dist.] 1986, pet. ref'd).

Prior to the time he initially stopped and detained Appellant, Gwosdz had received information through the police broadcast that: (1) a burglary had occurred in the vicinity a matter of minutes before the broadcast; (2) the suspects were two black males; (3) the suspects had driven off in a late model yellow Honda Civic automobile; and (4) the suspects were last seen traveling south on Bammel North Houston Road. The record affirmatively shows that Boudreaux identified herself to the dispatcher. *See Esco,* 668 S.W.2d at 362; *Brooks,* 707 S.W.2d at 705. Because this information was provided by identified private citizens who had witnessed the burglary, it was sufficient to provide Gwosdz with the probable cause needed to support an investigative stop and detention. *Brooks,* 707 S.W.2d at 705; *see also Louis v. State,* 825 S.W.2d 752, 756 (Tex.App.—Houston [14th Dist.] 1992, pet ref'd) (similar facts sufficient to warrant investigative detention despite fact that car had been identified as a white Oldsmobile rather than a tan Cadillac). Despite Appellant's argument to the contrary, this case is not like the facts in *Amores* where the only information given to the arresting officer was by radio call "for a 'burglary in progress' at the Square Apartments involving a 'black male' putting something in the trunk of a car." 816 S.W.2d at 410. Based on that meager information, the officer in *Amores*

blocked the suspect's car, ordered him out of the car at gunpoint, made him lie face down on the parking lot, searched him and then handcuffed him. The Court held that this "initial detention ... was in fact an arrest." 816 S.W.2d at 411.

It must next be determined whether Gwosdz diligently and reasonably pursued his investigation, using the least intrusive methods available to verify or dispel his suspicions and whether at the point the detention ripened into an arrest of the two men, he had in his possession from the radio transmission and from his investigation sufficient grounds to justify an arrest without a warrant.

In determining whether the police conduct in an investigatory detention is reasonable the totality of the circumstances are reviewed. *Shaffer v. State,* 562 S.W.2d 853, 855 (Tex.Crim.App.1978); *Le Flore v. State,* 819 S.W.2d 665, 667 (Tex.App.—Corpus Christi 1991, no pet.). The propriety of the detention is judged by whether the officer diligently pursued a means of investigation that was likely to dispel or confirm his suspicions quickly. *United States v. Sharpe,* 470 U.S. 675, 692–94, 105 S.Ct. 1568, 1579, 84 L.Ed.2d 605 (1985). The investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicions and must last no longer than is necessary to effectuate the purpose of the stop. *Florida v. Royer,* 460 U.S. 491, 500, 103 S.Ct. 1319, 1325–26, 75 L.Ed.2d 229 (1983); *Perez v. State,* 818 S.W.2d 512, 517 (Tex.App.—Houston—[1st Dist.] 1991, no pet.).

After getting both men out of the Honda, Gwosdz requested Busby to produce his driver's license and both men to show some identification. Neither were able to do so. It was at this point that Gwosdz drew his pistol[2] and proceeded to arrest and handcuff them, putting Busby in the back of his patrol car and Appellant in the back of another

---

2. Although Appellant argues that Deputy Gwosdz first "approached the Honda with his gun drawn," the record indicates only that he drew his gun before arresting the men, a reasonable inference being that he unholstered his gun only after he decided to arrest them.

patrol car[3] with the intention of transporting them back to the burglary scene for identification purposes. After securing the two men in the patrol cars, Gwosdz went over to the Honda, looked through the window and saw a canvas bag that matched the description in the supplemental broadcast.

Once a person or persons have been legally detained, an officer can make an arrest for any offense discovered during the investigative detention and may conduct a search incident to such lawful arrest. *Duncantell v. State,* 563 S.W.2d 252, 256 (Tex. Crim.App.1978); *Gillentine v. State,* 781 S.W.2d 382, 384 (Tex.App.—Houston [1st Dist.] 1989, no pet.); *Lee v. State,* 686 S.W.2d 255, 257 (Tex.App.—Houston [14th Dist.] 1985, pet. ref'd); Tex.Code Crim.Proc.Ann. art. 14.01(b) (Vernon 1977). It is a misdemeanor, and therefore an arrestable offense, for a person to operate a motor vehicle without having in his immediate possession a valid driver's license. *Snyder v. State,* 629 S.W.2d 930, 934 (Tex.Crim.App.1982); Tex. Rev.Civ.Stat.Ann. art. 6687b, § 13 (Vernon Supp.1994). After a police officer has made a proper custodial arrest of a driver, he may, as a contemporaneous incident of that arrest, conduct a search of the passenger compartment for weapons and may seize evidence of any criminal activity which is in plain view. *Miffleton v. State,* 728 S.W.2d 880, 883 (Tex. App.—Austin 1987), *aff'd,* 777 S.W.2d 76 (Tex.Crim.App.1989). Gwosdz' search of the vehicle, based upon his knowledge gained from the supplemental broadcast, constituted a sufficient investigation to justify the continued detention of Appellant. *Compare Salazar v. State,* 805 S.W.2d 538, 540 (Tex.App.—Fort Worth 1991, pet. ref'd) (handcuffing the detainee was, under the circumstances, a reasonable corollary to the investigative detention and therefore did not amount to an arrest), *with Burkes v. State,* 830 S.W.2d 922, 925 (Tex.Crim.App.1991) (where no investigative questioning preceded officer's conduct in requiring the defendant to lie down and handcuffing him, the detention rose to the level of an arrest and probable cause to conduct a patdown must be considered in

that light). Appellant argues that the canvas bag was a fruit of his illegal arrest because the discovery of the bag in plain view did not occur until after his arrest. The initial detention of Appellant and the vehicle was proper, based upon an articulable suspicion. Gwosdz' subsequent arrest of the driver permitted a continued detention of the vehicle, as well as its search. *Osban v. State,* 726 S.W.2d 107, 112 (Tex.Crim.App.1986); *see Garcia v. State,* 827 S.W.2d 937, 944 (Tex. Crim.App.1992). ("As long as an actual violation occurs, law enforcement officials are free to enforce the laws and detain a person *for that violation,* regardless of whatever the usual practices or standards of the local law enforcement agency are and regardless of the officer's subjective reasons for the detention.") Although arguably Gwosdz did not have sufficient facts and therefore a reasonable basis for arresting Appellant prior to observing the canvas bag, the discovery of the bag along with the broadcasted information and Appellant's lack of any identification provided sufficient articulable facts to support probable cause for Appellant's arrest. It would make little sense to hold that because Gwosdz' discovery of the canvas bag came after he had arrested Appellant rather than before, Appellant's arrest was therefore invalid even though the initial detention of both men, the subsequent arrest of Busby and the discovery were otherwise valid.

In conclusion, we hold that Gwosdz had knowledge of sufficient articulable facts to justify the initial investigative stop and detention and that as result of those facts and what he learned from his investigation, he had probable cause to arrest both Busby and Appellant. Appellant's first point of error is overruled. His second and third points, that the subsequent out-of-court identification and his written statement were fruits of an illegal warrantless arrest and therefore inadmissible, are for obvious reasons also overruled.

The judgment of the trial court is affirmed.

---

**3.** At some point after the initial stop, Gwosdz was joined by Deputy Morales in another patrol car.