COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS



MARIA CORDERO,


 Appellant,


v. 



THE STATE OF TEXAS,


 Appellee.
§


 


§


 


§


 


§


 


§


 


 § 


No. 08-05-00285-CR



Appeal from the


384th Judicial District Court


of El Paso County, Texas 


(TC# 20030D01442) 



O P I N I O N


 Maria Cordero was convicted by a jury of intoxication manslaughter, Count I, and was
sentenced to 3 years imprisonment, and of an accident involving injury or death, Count II, for
which she received 5 years probation She raises six issues challenging the trial court's denial of
her motions to suppress and the denial of her motion for directed verdict. We affirm.

 On December 7, 2002, eyewitnesses saw a green and brown Ford truck hit a pedestrian in
downtown El Paso. The truck did not slow or stop, and continued northbound on North
Campbell Street. The pedestrian, seventy-eight-year-old Clemente Perez, died at the scene. Two
witnesses remained at the scene after emergency services were notified to give statements to the
police. Police dispatch notified officers of the hit-and-run and instructed officers to look for a
green Ford pickup truck.

 Shortly after the dispatch was broadcast, El Paso Police Officer Ricardo Montes spotted a
green Ford pickup truck in the parking lot of the Montana Bar located in the 1800 block of
Montana Street, which is not far from the scene of the accident. Officer Montes pulled into the
parking lot and parked behind the vehicle, blocking the truck so it could not leave the parking
space. As he approached the truck, he observed the Appellant sitting in the driver's seat.

 One eyewitness was taken to where Appellant was detained and identified the vehicle as
the one that struck the victim. Two other witnesses identified the truck from a photograph during
trial. An additional witness, Maransazu Lizeaga, testified that on the night of the accident, at
approximately 10 p.m., she and her husband were nearly hit by a green Ford F-150 at the
intersection of Missouri and Campbell streets, one block south of the accident site. She testified
that she and her husband were driving through a green light, so she concluded that the truck had
run a red light when it almost hit their vehicle. Mrs. Lizeaga also testified that while she did not
see their faces, there were two occupants in the truck and the driver was petite. The Montana Bar
parking lot attendant also testified that he saw a green pickup truck enter the parking lot between
10:15 and 10:20 p.m. and that a petite, white female was driving. He saw the two occupants
enter the bar and return ten to fifteen minutes later.

 Appellant told Officer Montes, she had been at a nearby bar and that she had been in an
accident but that her truck had not sustained any damage. The male passenger confirmed
Appellant's story. Officer Montes then asked the male passenger to step out of the truck,
conducted a pat-down check, and secured him. The officer observed that the truck's grille was
cracked on the right side and that a bug deflector on the hood was damaged. He pointed out the
damage to Appellant, who said that she had not known it was there. Officer Montes observed
that Appellant had blood-shot eyes, slurred speech, and trouble maintaining her balance. 

 Police Officers Michael Macias and Raul Lom soon arrived to assist Officer Montes. 
Officer Macias took Appellant to his police car, while Officer Montes continued to examine the
pickup. Officer Montes contacted officers at the accident scene, who informed him that debris
matching the missing parts of the truck's grille and bug deflector had been found at the scene. 

 Officer Macias, a member of the DWI taskforce, testified that he had observed people
under the influence of alcohol on many occasions. As he escorted Appellant to his car, he
noticed that she had glassy, blood-shot eyes, uneven balance, and smelled strongly of alcohol. 
After looking at the front of the pickup himself, he returned to his car and advised Appellant of
her rights in both English and Spanish and had her sign and date the Spanish side of a Miranda
card. Officer Macias arrested Appellant for DWI and transported her to Mission Valley Regional
Command for field sobriety testing.

 At Mission Valley, Officer Macias asked Appellant for a breath sample to perform a
breathalyzer test. Appellant refused to provide a breathe specimen. Officer Macias then
performed three field sobriety tests: the Horizontal Gaze Nystagmus test, the Walk and Turn
test, and the One Leg Stand test on Appellant. Appellant failed all three sobriety tests. 
Immediately after the tests, the officer learned that the pedestrian had not survived the collision. 
Pursuant to police policy, Appellant was taken to Thomason Hospital for a blood sample. 

 During the drive, Officer Macias told her that she had struck an elderly gentlemen who
had died. In response, Appellant stated, "I hope it wasn't Clemente." At that time, the officer
did not know the victim's name.

 At the hospital, the officers provided Appellant with the statutory warnings regarding the
blood sample, and a sample of her blood was drawn. Officer Lom, who had driven to the
hospital in another car, testified that they entered in the emergency room through a separate
police entrance, not the main entrance. He instructed the lab technician not to use an alcohol
swab because they were testing the blood for alcohol. Macias explained that he was familiar
with the technician, Alvin Santos, who drew Appellant's blood. The results of Appellant's blood
alcohol analysis showed she had an alcohol concentration of .24. Appellant was then transferred
to Special Traffic Investigators (STI) at police headquarters who took over the accident
investigation.

 STI investigator Antonio Portillo, Jr. investigated the collision. During the search of the
vehicle, he found blood, hair, and a glass containing liquid. Paint chips and parts of the bug
shield from the truck were removed and compared with parts that were found at the scene of the
accident. Officer Portillo testified at trial that they were a match to the truck Appellant had been
driving that evening. He also concluded that the damage to the truck was consistent with what
one would see in a pedestrian collision.

 After finishing at the scene, Officer Portillo returned to headquarters where Appellant had
already been transported. He noticed that Appellant had fallen asleep and she remained asleep
until awakened by an officer. When she was awakened, Appellant asked again if the victim was
Clemente. Officer Portillo confirmed that the victim was Clemente Perez. When Officer Portillo
told Appellant that Clemente had been killed, she began sobbing. According to Officer Portillo,
Appellant's comment and reaction were not made in response to any questioning. Appellant was
placed under arrest for driving while intoxicated that evening.

 Appellant was indicted on March 20, 2003, for intoxication manslaughter, accident
involving injury or death, including the use of a deadly weapon. Following the indictment,
Appellant moved to suppress all physical evidence seized following the search of her truck and
her person arguing any evidence was collected as the result of an illegal search. In a second
motion to suppress, Appellant argued that all written and oral statements made to the police on
the night of the accident were inadmissible because they were products of a custodial
interrogation, were not made voluntarily, and without the proper admonishments required under
Texas and Federal law. In a third motion, Appellant argued the blood alcohol test, taken at
Thomason Hospital was also inadmissible on multiple grounds. The trial court denied
Appellant's motions.

Standard of Review - Motion to Suppress


 In Issues One and Two, Appellant asserts the trial court's denial of her motions to
suppress the "Clemente" statements and the blood alcohol test was error. In reviewing a trial
court's ruling on a motion to suppress, we utilize a bifurcated standard of review. Carmouche v.
State, 10 S.W.3d 323, 327 (Tex.Crim.App. 2000). At a suppression hearing, the trial judge is the
sole trier of fact and arbiter of the credibility of the witnesses and the weight to be given their
testimony, and may accept or reject all or any part of a witness's testimony. State v. Ross, 32
S.W.3d 853, 855 (Tex.Crim.App. 2000). Accordingly, we do not engage in our own factual
review of the trial court's decision. Romero v. State, 800 S.W.2d 539, 543 (Tex.Crim.App.
1990). We give almost total deference to the trial court's ruling on questions of historical fact
and application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. 
Johnson v. State, 68 S.W.3d 644, 652-53 (Tex.Crim.App. 2002). On the other hand, mixed
questions of law and fact that do not turn on the credibility and demeanor of a witness are
reviewed de novo. Johnson, 68 S.W.2d at 652-53.

 When the trial court does not file any findings of fact, as here, we review the evidence in
the light most favorable to the trial court's ruling. Torres v. State, 182 S.W.3d 899, 902
(Tex.Crim.App. 2005). We will assume that the trial court made implicit findings of fact that
support its ruling, as long as those findings are supported by the record. Id. We will uphold the
trial court's ruling if it is correct on any theory of law applicable to the case. Ross, 32 S.W.3d at
855-56.

 An officer's temporary detention is lawful if based on reasonable suspicion that an
individual is violating the law. Ford v. State, 158 S.W.3d 488, 492 (Tex.Crim.App. 2005).
Reasonable suspicion exists if the officer has specific, articulable facts that when combined with
rational inferences from those facts, would lead him to reasonably conclude that a particular
person actually is, has been, or soon will be engaged in criminal activity. Id. Whether an officer
has reasonable suspicion to make an investigatory stop must be based on an objective standard
and we must consider the totality of the circumstances at the time of the stop. Id. at 492-93; Icke
v. State, 36 S.W.3d 913, 915 (Tex.App.--Houston [1st Dist.] 2001, pet. ref'd).

 The articulable facts necessary to establish reasonable suspicion need not solely arise
from the officer's observations, but may be supplied by another person. See Adams v. Williams,
407 U.S. 143, 147, 92 S.Ct. 1921, 1923-24, 32 L.Ed.2d 612 (1972); Brother v. State, 166 S.W.3d
255, 257 (Tex.Crim.App. 2005). A police broadcast, if based on reliable information furnished
by an otherwise credible, known private citizen, whose only contact with the police or criminal
activity results from having witnessed a criminal act, may be sufficient to provide an officer with
probable cause to stop persons matching the witness's description for investigatory purposes.
Esco v. State, 668 S.W.2d 358, 360 (Tex.Crim.App. 1982); Gaines v. State, 888 S.W.2d 504, 509
(Tex.App.--El Paso 1994, no pet.). Corroboration requires an officer to confirm enough facts to
reasonably conclude that the information given is reliable and a temporary detention is justified.
Brother, 166 S.W.2d at 259 n.5; Pipkin v. State, 114 S.W.3d 649, 654 (Tex.App.--Fort Worth
2003, no pet.).

 Appellant contends that she was illegally arrested when Officer Montes used his police
patrol car to block her truck into the parking space in the Montana Bar parking lot. Appellant
argues that because the officer only had a general description of the truck involved in the
accident at the time he stopped her there was no reasonable suspicion for an investigatory
detention, and that by blocking her vehicle and preventing her from leaving the parking lot, he
essentially placed her under custodial arrest.

 During the suppression hearing, El Paso Police Officer Jesus Sanchez testified that he
was called out to an accident on December 7, 2002 at approximately 10:11 p.m. The call was a
hit and run pedestrian accident with injuries. While on route to the scene, Officer Sanchez
received a second dispatch advising that the hit and run vehicle was a green Ford F-150 pickup
truck. Upon his arrival, Officer Sanchez learned that the victim had already expired. He testified
that he spoke to two civilian eyewitnesses who described the vehicle that struck Mr. Perez as a
green Ford F-150 pickup truck.

 Officer Ricardo Montes testified that on the date in question, he also received a dispatch
regarding a traffic collision involving a pedestrian. According to the dispatch, a green truck was
observed fleeing the scene. Shortly thereafter, Officer Montes received a broadcast from the
accident scene describing the vehicle as a green Ford pickup truck with possibly brown on the
bottom. He spotted a truck matching the description in a parking lot on the 1800 block of
Montana, not far from the accident scene.

 The officer testified that as he pulled in behind the truck, it was about to back out, and to
prevent the truck from leaving, the officer parked his patrol car behind the truck. The State
agrees that by doing so, the officer detained Appellant. On the other hand, Appellant does not
dispute the reliability of the information provided by the witnesses at the scene. So the question
before us is limited to whether the information known to Officer Montes supports a finding of
reasonable suspicion.

 Appellant argues that the detention was invalid because the officer had, "nothing more
than a general description of a pickup truck," when he drove into the parking lot. Appellant's
analysis fails, however, to account for the totality of the circumstances. In addition to the very
specific--make, model, and color--description of the truck, the officer also knew the truck was
not far from the accident scene and not long after the accident was reported.

 Under the totality of the circumstances, we find that the officer's decision to detain
Appellant for further investigation was supported by reasonable suspicion. See Gaines, 888
S.W.2d at 509 (reasonable suspicion existed where officer saw two black males in a yellow
Honda Civic on a certain road after receiving a radio broadcast that two black males had
committed a burglary only minutes before, and had fled in a late model yellow Civic traveling
south on the same road).

 Appellant cites Villalobos v. State, 999 S.W.2d 132, 135 (Tex.App.--El Paso 1999, no
pet.), in support of her argument that the officer's act of blocking her truck into the parking space
constituted an illegal custodial arrest. In Villalobos, this Court determined that the trial court
erred by denying the defendant's motion to suppress because there was no probable cause to
support his arrest. Villalobos, 999 S.W.2d at 133. In that case, two El Paso Police officers, in an
unmarked car, blocked Villalobos into a parking space to prevent him from leaving what the
officers believed to be the scene of a drug transaction. Id. at 134. One officer jumped from the
police car and ordered Villalobos out of his car before the officer's own car had come to a
complete stop. Id. at 134. Villalobos was then ordered to place his hands on his head, and was
subjected to a pat-down search before the officers asked him any questions. Id. at 134. Under
the totality of the circumstances in Villalobos, we determined that the officers effected a
custodial arrest rather than an investigatory stop. Id. at 134-35.

 The facts of the case before us are distinguishable. While the totality of the
circumstances in Villalobos included the act of blocking the defendant's vehicle, the decision
also relied on the officer's actions in removing Villalobos from his vehicle and patting him
down, before beginning an investigation. See id. at 135. In this case, Officer Macias after
detaining the Appellant's car, questioned her about her whereabouts that evening and whether
she had been involved in an accident. Only after Appellant admitted she had been involved in an
accident, and which was confirmed by the male passenger, did the officer ask the couple to step
out of the truck and pat them down. Officer Macias and Officer Montes both testified that
Appellant exhibited numerous signs of intoxication in the Montana Bar parking lot including
uneven balance, slurred speech, bloodshot eyes, and the strong odor of alcohol on her person. 
Under these circumstances, we conclude that Appellant was the subject of an investigatory
detention in the Montana Bar parking lot. During the officers' investigation, additional facts
developed to support a continued detention and later Appellant's arrest for DWI. Appellant was
not illegally arrested and the trial court did not err in denying Appellant's motions to suppress on
this ground. Issues One and Two are overruled.

Blood Alcohol Test Admissibility


 In Issues Four and Five, Appellant contends the results of the blood alcohol test should
have been excluded from evidence. She argues the State failed to prove the phlebotomist, who
drew the specimen at Thomason Hospital, was qualified to collect the sample as required by
statute. (1) She continues that the State did not establish that the specimen was taken in a sanitary
place. Finally, she challenges the State's proof of the specimen's chain of custody. 

 A trial court's ruling on the admissibility of evidence is reviewed for an abuse of
discretion. Casey v. State, 215 S.W.3d 870, 879 (Tex.Crim.App. 2007). An abuse of discretion
occurs when the trial court's decision lies outside the zone of reasonable disagreement. Id.

 Under Section 724.017 of the Texas Transportation Code, "Only a physician, qualified
technician, chemist, registered professional nurse, or licensed vocational nurse may take a blood
specimen at the request or order of a peace officer under this chapter." Tex.Transp.Code Ann.
§ 724.017(a)(Vernon 1999). Because a phlebotomist is not specifically identified as a person
"qualified" under the statute, the individual's status as a "qualified technician" must be proven to
satisfy the statute. Torres v. State, 109 S.W.3d 602, 605 (Tex.App.--Fort Worth 2003, no pet.).

 Appellant argues that the State did not carry its burden to prove the technician who drew
her blood on the night of the accident was qualified. Officer Macias testified that Appellant's
blood was drawn by a technician named Alvin Santos, who Officer Macias knew, and who he
had witnessed draw blood many times. Steven Meadows, a Thomason Hospital registered nurse,
testified on Mr. Santos's professional qualifications. (2) In December 2002, Mr. Meadows was the
charge nurse and clinical coordinator at Thomason. His duties included organizing patient flow
and supervising and evaluating emergency room staff. Mr. Meadows worked with Mr. Santos
for three years, and had observed Mr. Santos drawing blood during that time. According to
Mr. Meadows, in order for Mr. Santos to have been employed at Thomason as a phlebotomist,
Mr. Santos was required to be certified by the State. Based on Mr. Meadows' and Officer
Macias' testimony, the trial court did not abuse its discretion by determining that Mr. Santos was
a "qualified technician" as required under Section 724.017. See Tex.Transp.Code Ann.
§ 724.017; Hines v. State, 515 S.W.2d 670, 672 (Tex.Crim.App. 1974).

 Appellant also asserts, in Issue Four, that the blood test and results were inadmissible
because the State failed to prove the conditions at the site where the sample was drawn were
sanitary. Specifically, Appellant argues that Officer Lom's testimony that the sample was drawn
in a waiting area just outside the treatment rooms is insufficient to prove the area was sanitary.

 To be admissible, the blood specimen must be taken in a "sanitary place" by a "physician,
qualified technician, chemist, registered professional nurse, or licensed vocational nurse . . . ."
Tex.Transp.Code Ann. § 724.017(a). While we well know of the ongoing challenges of
controlling staph infections in hospitals, it is also common knowledge that hospitals are regularly
inspected and that one of the core function of hospitals is the maintenance of sterile environment. 
See Mitchell v. State, 821 S.W.2d 420, 424 (Tex.App.--Austin 1991, pet. ref'd)(recognizing that
the State no longer has to prove that the place is inspected on a periodic basis). Moreover, there
was testimony that the area where the sample was drawn was a triage area that was cleaned
multiple times a day to maintain a sanitary condition. The trial court could have reasonably
inferred from the witness testimony as well as the nature of the hospital itself, and manner in
which Appellant's blood was drawn, that the room in the treatment area where Appellant's blood
was drawn was a sanitary place. As such, the trial court did not abuse its discretion on this
ground.

 In Issue Five, Appellant contends the State failed to introduce evidence to establish the
chain of custody for her blood alcohol test. Specifically Appellant argues that there is no
evidence of the beginning of the specimen's chain of custody due to the State's failure to make
the blood specimen routing report part of the record in the case. Laboratory test results and the
item tested are admissible only after a proper chain of custody has been established. Penley v.
State, 2 S.W.3d 534, 537 (Tex.App.--Texarkana 1999, pet. ref'd), cert. denied, 520 U.S. 1243,
120 S.Ct. 2689, 147 L.Ed.2d 961 (2000). Proof of the beginning and end of the chain will
support admission of the evidence barring any showing of tampering or alteration. Stoker v.
State, 788 S.W.2d 1, 6 (Tex.Crim.App. 1989), cert. denied, 498 U.S. 951, 111 S.Ct. 371, 112
L.Ed.2d 333 (1990). Any gaps in the chain of custody go to the weight of the evidence rather
than to its admissibility. Stoker, 788 S.W.2d at 10.

 Officer Lom testified at trial that he provided the blood kit and vial to the technician at
the hospital and was present while Appellant's blood was drawn. Once the specimen was
collected, Officer Lom sealed the vial in a container and marked it with Appellant's name, the
date, and the technician's name. Officer Lom identified his handwriting on the container at trial,
and explained that he personally transported the specimen from the hospital to police
headquarters where he logged it into evidence. Officer Gilkison was the evidence custodian who
received the container from Officer Lom. Officer Gilkison testified that he received the kit from
Officer Lom, and identified his own handwriting and initials on the envelope he used to ship the
sample to the DPS Crime lab for analysis on December 12, 2002. He also explained that he
received the sample when it was returned with results from the Department of Public Safety Lab. 
Once the sample was back in El Paso Police possession, Officer Gilkison turned the test result
report in to the records division, and turned the blood kit over to the property office. DPS
Chemist Hambrick testified that he received the envelope containing Appellant's sample, in a
sealed container on December 13, 2002. He identified his own initials and the laboratory case
number on the container which he testified contained Appellant's blood sample identified with
Appellant's name.

 While the specimen routing report would certainly be helpful to further establish the
chain of custody, the officers' testimony was sufficient without it to prove the beginning and end
of the chain. Any remaining gaps in the chain would only affect the weight and credibility of the
evidence not its admissibility. See Penley, 2 S.W.3d at 537. Therefore, the trial court did not
abuse its discretion by admitting the blood test and results into evidence. We overrule Issues
Four and Five.

 In Issue Six, Appellant contends that the trial court erred by denying her motion for
instructed verdict specifically due to a lack of evidence identifying Appellant as the driver of the
vehicle and of intoxication. Appellant's point of review is essentially a challenge to the legal
sufficiency of the evidence supporting the identification and intoxication elements of her
conviction. See Canales v. State, 98 S.W.3d 690, 693 (Tex.Crim.App. 2003). In a legal
sufficiency review, we view all of the evidence in the light most favorable to the verdict in order
to determine whether any rational trier of fact could have found the challenged elements of the
offense beyond a reasonable doubt. Canales, 98 S.W.3d at 693.

 Appellant was convicted of intoxication manslaughter. A person commits such an
offense if the person operates a motor vehicle in a public place, while intoxicated, and by reason
of the intoxication, causes the death of another. Tex.Pen.Code Ann. § 49.08(a)(Vernon Supp.
2007). Appellant argues that the evidence is legally insufficient to support the jury's
determination that she was the person driving the vehicle that killed Mr. Perez, and that the
evidence is legally insufficient to support the jury's finding that she was intoxicated. We
disagree.

 Regarding the identity element, the record shows that Appellant was found, shortly after
the accident, in the driver's seat of a pickup truck matching the description of the truck leaving
the scene of the accident. The truck had damage matching debris found at the scene. Appellant
and her passenger matched the witness description of the two people in the pickup at the time of
the accident. In addition, Appellant's Ford truck was identified as the vehicle that fled the scene
of the collision. Viewing this evidence in the light most favorable to the verdict, a rational trier
of fact could have determined that Appellant was the individual driving the vehicle that struck
and killed the victim in this case.

 Regarding the intoxication element, the record shows that Appellant's blood alcohol level
on the evening of the accident was over .08. In addition, Appellant was unable to perform the
tasks requested during the field sobriety tests. The arresting officer in the case testified that
Appellant exhibited signs of intoxication, including the odor of alcohol on her person, blood shot
eyes, and slurred speech, during his conversation with her in the Montana Bar parking lot. 
Viewing the evidence in the light most favorable to the verdict, and regardless of whether the
finding was based on Appellant's blood alcohol level, or the evidence that she had lost the use of
her mental and physical faculties due to the introduction of alcohol, a rational trier of fact could
have determined that Appellant was intoxicated. Because the evidence in support of the
challenged elements is legally sufficient, Issue Six is overruled.

 In Issue Three, Appellant argues the "Clemente" statements should have been suppressed
under Tex.R.Evid. 403. To preserve a complaint for appellate review, the party must make a
timely, specific objection and obtain an adverse ruling. Tex.R.App.P. 33.1(a). In addition, the
objection at trial must comport with the complaint made on appeal. Guevara v. State, 97 S.W.3d
579, 583 (Tex.Crim.App. 2003). Appellant did not raise Rule 403 as a ground for excluding her
statements either during pretrial hearings, or during trial. Therefore, the issue was not preserved
for this Court's review. See Goff v. State, 931 S.W.2d 537, 551 (Tex.Crim.App. 1996). 
Therefore, Issue Three is overruled. 

 We affirm the judgement of the trial court.


January 17, 2007

 DAVID WELLINGTON CHEW, Chief Justice


Before Chew, C.J., McClure, and Carr, JJ.


(Do Not Publish)
1. Appellant also argues under Issue Four that Mr. Santos's failure to testify violated her
right to confront the witnesses against her under the Confrontation Clause of the United States
Constitution. See U.S.Const. amend. VI. To preserve a complaint for appellate review, a party
must make a timely objection to the trial court and obtain a ruling. See Tex.R.App.P. 33.1(a). In
this case, while defense counsel did raise an objection during trial to Mr. Santos' failure to
testify, there is no record that the trial court ruled on the objection. Therefore, the argument has
not been preserved for our review.
2. At the time of trial, Mr. Santos was no longer employed at Thomason and no longer
living in the State of Texas. The State was unable to produce him to testify at trial.