Ed Douglas PORTER, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–95–00058–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Dec. 5, 1996.

Kimnerly De La Garza, Leora Kahn, Houston, for Appellant.

John B. Holmes, Lester Blizzard, Houston, for Appellee.

Before HUTSON–DUNN, O'CONNOR and TAFT, JJ.

## OPINION

HUTSON–DUNN, Justice.

We overrule appellant, Ed Douglas Porter's, motion for rehearing, but we withdraw our earlier opinion and substitute the following in its place.

A jury found appellant guilty of the offense of possession of less than 28 grams of cocaine. The trial court found two enhancement allegations true and sentenced him to 40–years confinement. We affirm.

In five points of error, appellant contends the trial court erred in denying his motion to suppress by violating his protection against unreasonable search and seizure granted by the United States [1] and Texas Constitutions.[2] He further contends the trial court abused its discretion in preventing his counsel from questioning the venire panel on the application of Tex.Code Crim.Proc.Ann. art. 38.23 (Vernon Supp.1996).

## Factual Background

On March 19, 1994, Houston Police Department Officers D.C. Eckenrode (Eckenrode) and Rick Thomas (Thomas) were on patrol in the Third Ward area of Houston. About 9:15 p.m., the officers were flagged down by a female, who described an incident that had just occurred.[3] She gave the officers a description of the man involved in the incident. While talking to the officers, the female pointed to a vehicle and told the officers, "that's the one, that's the one that did it." Eckenrode testified that he and Thomas immediately turned around and followed the vehicle with their lights and siren on. Eckenrode testified that they followed the vehicle at a medium rate of speed for a few blocks, when the vehicle stopped, the driver exited the vehicle, and fled from the officers into a wooded area between some houses.[4] The officers chased the suspect, but lost sight of him. Eckenrode testified that approximately four minutes elapsed from the time they were flagged down until the time they lost the suspect. After losing the suspect, Eckenrode radioed a general broadcast to other officers in the area notifying them of what the man was wearing and the direction that he went.

Officers J.E. Vigil (Vigil) and Marc Loera (Loera) were on patrol approximately five miles away when they heard the general broadcast and decided to help Eckenrode and Thomas with their search. Vigil testified that the description he received described

1. U.S. Const. amend. IV.

2. Tex. Const. art. I, § 9.

3. The incident complained of was an alleged assault. However, the trial court granted defense counsels motion in limine excluding any testimony or evidence of this "incident."

4. When appellant fled from the officers he committed a crime: "A person commits an offense if he intentionally flees from a person he knows is a peace officer attempting to lawfully arrest or detain him." Tex. Penal Code Ann. § 38.04 (Vernons 1994).

the suspect as a black male, dressed in all black, approximately six feet tall with a salt and pepper beard. As the officers searched for the suspect, they saw a taxicab approaching from the opposite side of the street. Vigil testified that as the vehicles slowed down to pass each other on the narrow street, he saw a person in the cab, who appeared to be "sliding down in his seat." He told Loera, "that was him. It looks like him." Loera testified that he remembered the general broadcast description as "a black male running from the police with a salt and peppered beard and mustache" and noticed that the person in the cab fit this description.

Loera got out of the patrol car and ran after the cab, while banging on the trunk for the driver to stop. When the cab stopped, Loera approached the passenger from one side with his gun drawn and ordered appellant out of the cab. At the same time, Vigil approached the cab from the other side and saw appellant stuffing what appeared to be a plastic baggie under the seat of the cab. Appellant was removed from the cab and placed in handcuffs. Eckenrode testified that appellant was sweating, breathing hard, had a high heart rate, and was cut and scratched on his legs and arms. After placing appellant in his patrol car, Loera returned to the cab and searched under the curvature of the rear seat where he recovered the plastic bag that contained a substance, which was later tested and determined to be crack cocaine. Appellant was later transported to the original scene of the incident where she positively identified appellant.

Appellant filed a motion to suppress, alleging that the seizure of the cocaine was unconstitutional. The motion was carried with the trial. The State declined to stipulate that there was no warrant. Outside the presence of the jury, defense counsel, while questioning Vigil, established that the officers did not have a search warrant to seize the cocaine. When the State offered the cocaine as evidence, defense counsel timely objected to its admission, based on the motion to suppress. The trial judge overruled the objection and denied the motion to suppress.

## Analysis

■ In his first four points of error, appellant asserts that the trial court erred in overruling his motion to suppress evidence obtained in violation of both article I, section nine of the Texas Constitution and the fourth amendment of the United States Constitution.[5] He argues that his warrantless arrest and the search were not supported by probable cause. We address these points of error together.

■ A trial court's ruling on a motion to suppress will not be set aside absent a showing of an abuse of discretion. *Maddox v. State*, 682 S.W.2d 563, 564 (Tex.Crim.App. 1985). This Court should not engage in its own factual review. Instead, viewing the evidence in the light most favorable to the decision of the trial court's ruling, this Court must consider only whether the judge improperly applied the law to the facts. *Daniels v. State*, 718 S.W.2d 702, 704 (Tex.Crim. App.) *cert. denied*, 479 U.S. 885, 107 S.Ct. 277, 93 L.Ed.2d 252 (1986); *Covarrubia v. State*, 902 S.W.2d 549, 553 (Tex.App.—Houston [1st Dist.] 1995, pet. ref'd). At the hearing on the motion to suppress, the trial judge is the sole finder of fact and may believe or disbelieve all or any part of a witness' testimony. *Taylor v. State*, 604 S.W.2d 175, 177 (Tex.Crim.App.1980). A finding will not be reversed on appeal if there is evidence in the record to support the decision of the trial court. *Id.*

■ In the warrantless search context, the burden of proof is initially on the accused to show that the search and seizure occurred and that no warrant was obtained. *State v. Brunner*, 917 S.W.2d 103, 105–06 (Tex. App.—San Antonio 1996, no writ). The state must then either produce evidence of a war-

5. The search and seizure provisions of the Texas Constitution warrant separate and distinct analysis from a federal constitutional analysis. *See Heitman v. State*, 815 S.W.2d 681, 690 (Tex. Crim.App.1991). Appellant makes no distinction between constitutions regarding warrantless arrests, and research reveals no cases in which the Court of Criminal Appeals has analyzed Article I, section nine differently from the analysis applied to the fourth amendment to the federal constitution.

rant or prove the legality of the search by establishing probable cause by a preponderance of the evidence. *Gaines v. State,* 888 S.W.2d 504, 508 (Tex.App.—El Paso 1994, no writ).

■ For a warrantless arrest or search to be justified, the State must show the existence of probable cause at the time of the search or arrest. *Brown v. State,* 481 S.W.2d 106, 109 (Tex.Crim.App.1972). Probable cause exists when the facts and circumstances within the officer's knowledge and about which he had reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution in the belief that a crime has been or is about to be committed. *Beck v. Ohio,* 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); *Lunde v. State,* 736 S.W.2d 665, 667 (Tex.Crim.App. 1987); *Cornejo v. State,* 917 S.W.2d 480, 482 (Tex.App.—Houston [14th Dist.] 1996, no writ); *Covarrubia,* 902 S.W.2d at 553. The determination of probable cause at the time of the questioned event is viewed from the "totality of the circumstances." *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983); *Angulo v. State,* 727 S.W.2d 276, 278 (Tex.Crim.App.1987). The reviewing court must look at the totality of the circumstances to determine if there exists a substantial basis for concluding that probable cause existed at the time of the questioned event. *Id.*

In our case, defense counsel, out of the presence of the jury, asked Vigil if he had a warrant to arrest appellant, and he answered, no. Thus, the burden shifted to the State to prove the legality of the detention and search by establishing probable cause by a preponderance of the evidence. Although the State did not put on any evidence out of the presence of the jury regarding the underlying assault to prove probable cause, this did not prevent the State from meeting its burden.

■ Looking at the totality of the circumstances involved in this case in the light most favorable to the decision of the trial court, the testimony of Eckenrode, Vigil, Thomas, and Loera, that was presented before the denial of appellant's motion to suppress, established the following.

1. Around 9:15 p.m. Eckenrode and Thomas, with five and four and one-half years experience respectively, were flagged down by a female who described to the officers an incident that occurred and gave the officers a description of the suspect.[6]

2. While describing the incident to the officers, the female pointed out a vehicle and told Eckenrode and Thomas, "that's the one. That's the one that did it."

3. Eckenrode and Thomas followed the suspect at a medium rate of speed with their lights and siren on.

4. The suspect stopped his vehicle and fled from the officers into a wooded area.

5. The officers gave chase but lost the suspect.

6. Eckenrode made a general broadcast over the police radio to other officers in the area of what the man was wearing and the direction that he fled.

7. Vigil and Loera were on patrol in the area, received the general broadcast, and proceeded to help in the search for the suspect.

8. As Vigil and Loera were in their patrol car searching for the suspect, they saw a taxi cab approaching them on the opposite side of the street. As the cab and the patrol car passed each other on the narrow street, Vigil testified he saw a man in the rear of the cab who fit the description of the suspect who appeared to be sliding down in the seat of the cab. Vigil told Loera, "that was him. It looks like him."

9. Loera got out of the patrol car and ran after the cab while banging on the trunk for the driver to stop.

10. When the cab did stop, Loera approached from one side with his gun drawn and ordered appellant out of the cab. At the same time, Vigil approached the cab from the opposite side and saw appellant

---

**6.** The female described appellant as a black male, dressed in all black, approximately six feet tall with a salt and pepper beard.

stuffing a plastic baggie under the seat of the cab.

11. Appellant was removed from the cab and placed in handcuffs. When removed from the cab, appellant was sweating, breathing hard, had a high pulse rate, and was cut and scratched on his legs and arms.

12. After appellant was placed in the patrol car, Loera searched under the curvature of the rear seat of the cab and recovered the plastic bag that contained a substance that was later identified as cocaine.

13. After the recovery of the cocaine, appellant was taken to the scene of the incident, and the female positively identified him.

The concept of probable cause is a fluid one. It deals in probabilities, not certainties. *Angulo,* 727 S.W.2d at 279. In the instant case, we hold that the totality of the circumstances, as outlined above, when viewed in the light most favorable to the decision of the trial court, provided the officers probable cause to detain appellant and search the cab in which appellant was a passenger. Therefore, the trial court did not err in overruling appellant's motion to suppress.

We overrule appellant's first four points of error.

In his fifth point of error, appellant asserts the trial court abused its discretion in preventing defense counsel from questioning the venire panel on the provision of the Texas Code of Criminal Procedure that provides in relevant part that when the evidence raises an issue whether evidence was legally obtained, if the jury has a reasonable doubt whether it was legally obtained, the jury should disregard it. *See* TEX.CODE CRIM. PROC.ANN. art. 38.23. (Vernon Supp.1996)

■ During voir dire, defense counsel, Ms. Kahn, outlined to the venire panel the provisions of article 38.23 and the law that requires a search warrant to be signed by certain kinds of judges. She then described a hypothetical fact situation in which a judge, who did not have the power to sign a search warrant, did so, and the use of the search warrant led to discovery of evidence that linked a person to a terrible murder. Ms. Kahn then asked the question: "Could you as a juror disregard the evidence because it was obtained unlawfully even though you know that the person is guilty beyond a reasonable doubt?" The court sustained the prosecutor's objection to the question. In its charge to the jury, the court gave an article 38.23 instruction.

■ While it is proper to use hypothetical fact situations to explain the application of the law, it is improper to inquire how a venireperson would respond to particular circumstances presented in a hypothetical question. *Cadoree v. State,* 810 S.W.2d 786, 789 (Tex.App.—Houston [14th Dist.] 1991, pet. ref'd) (citing *Cuevas v. State,* 742 S.W.2d 331, 336, n. 6 (Tex.Crim.App.1987)); *White v. State,* 629 S.W.2d 701, 706 (Tex.Crim.App. 1981).

In this case, appellant attempted to have venirepersons commit to how they would respond to particular circumstances presented in a hypothetical question. Under the preceding authorities, the trial court judge did not abuse his discretion in sustaining the State's objection to such a question.

Appellant's fifth point of error is overruled.

We affirm the judgment of the trial court.

TAFT, J., concurs.

TAFT, Justice, concurring.

I concur with the majority opinion, but write separately to state a different rationale for overruling points of error one through four.

### Factual Context

Before trial, appellant filed a *pro forma* motion to suppress, asserting that his arrest and detention were made without a warrant, were contrary to article one, section nine of the Texas Constitution and chapter 14 of the Texas Code of Criminal Procedure. Appellant asked the trial court to suppress the resulting evidence. Also before trial, appellant filed a motion in limine that the trial court instruct the assistant district attorney and the investigating police officers that they not mention or allude to any statements

made to them by the complainant, Rose Marie Belle, or any extraneous offenses alleged to have been committed by appellant at or about the time of his arrest. On November 14, 1994, at a pretrial hearing, appellant's counsel stated that appellant would carry his motion to suppress to the trial.

On December 14, 1994, the trial court heard appellant's motion in limine. At the hearing, appellant's counsel, Ms. Kahn, requested the trial court grant her motion in limine regarding any statements made by the complainant to the investigating police officers because such statements would be "highly prejudicial and irrelevant to the offense charged." In response, the prosecutor stated:

> Judge, perhaps a brief going into the underlying facts of the case might help Your Honor in understanding what Ms. Kahn is talking about. What happened is on March 19, 1994, officers were flagged down by Ms. Belle because she told the officers that her common-law husband, [appellant], was hitting her and taking off in her car. She was able to point out a car to the officers and told them that was her boyfriend or common-law husband, and that he assaulted her and he was leaving in her car.

> Officers pursued, they went on a chase. He eventually got out of the complainant's car, abandoned it, ran on foot, jumped a fence, went through some wooded areas and attempted to get in a taxicab. The officers were able to detain him there at the cab, where they recovered some rocks of cocaine in the cab, and hence, he was charged with possession of a controlled substance, as well as an assault case.

In the context of her motion in limine, Ms. Kahn discussed the State's notice to her of its intention at trial to use three extraneous offenses:

> These [the first two of the three extraneous offenses] are prior convictions. These are not notice of any extraneous offenses, and it's our understanding that the only extraneous offense that they could be referring to in this matter would be the assault of the complainant.

After hearing that the State's assault case against appellant had been dismissed, the trial court ruled evidence of the assault would not be admissible at trial. At this point, the following colloquy occurred:

> Prosecutor: I understand that we would not be allowed to go into the fact that an assault case was filed or that an assault case was dismissed. However, the jury is not allowed to understand why it is the officers took after the defendant? That might lead to a confusion of issues, and I can understand how, if we're not able to tell the jury what prompted the police officers to try to detain the suspect. Then they will be left without any evidence at all and wondering why this defendant became a subject for these officers. And I don't think that that's fair to hold the State to not allow us to explain why the complaining witness flagged down the officers.

> Court: It may not be fair in your mind, but I think the law is clear. . . .

> I think you're going to be able to do exactly what you've always done, that is, to elicit from Ms. Belle, based on a conversation she had with certain officers, did those officers take certain action based upon her conversation. "Yes, they did." "And what was that?" Then you get into the chasing him, whatever it is, and arresting him, and whatever else it was. But I think that's as far as you can go, based upon the law that I know. . . .

> Prosecutor: If Ms. Belle takes the stand, will I be allowed to ask her what prompted her to flag the officers down?

> Court: I think you can. I don't know whether you can ask her what prompted her because I'm not sure what questions— or what answer you're hoping to get from that. But if you were to be hoping to be able to ask what prompted her to flag the officers down, and she were to blurt out, "Well, because he assaulted me," then, of course, you're going to be in violation of the motion, the ruling of the Court.

Just before trial, which took place January 5, 1995, the court and counsel had the following colloquy about testimony related to the police officers' conversation with the com-

plainant that motivated their pursuit of appellant:

> Prosecutor: I just want to make sure—there was a motion in limine which you instructed a previous prosecutor and instructed me on a ruling on the assault, the underlying assault, and I instructed my officers not to discuss the fact that it was an assault. I believe that's correct but, however, they were entitled to mention that they were flagged down, that they talked to an individual and—the result of that conversation, they did something. They did something. They went after this particular person
>
> Court: But not to discuss the basis or the conversation itself.
>
> Prosecutor: Not to discussion [sic] the conversation itself and it was also including the fact that there was an assault, underlying assault.
>
> Ms. Kahn: They cannot discuss it.
>
> Court: They are not to talk about the assault, period.

At trial, Officer Eckenrode testified to the following. On March 19, 1994, he and his partner were flagged down by a female and that: "She described to us an incident that had occurred just then. And at that time she pointed to a vehicle that—she was saying, that's the one, that's the one that did it." The female described the person in question as a black male, five feet 11 inches tall, weighing 175 pounds, and having a salt and pepper beard. With lights and sirens on, the officers gave chase. When the car stopped, and the man fled from it, the officers chased him on foot until they lost him, at which point they broadcast his description on the police radio.

Officer Vigil testified as follows. As he was passing a taxi, he looked inside and recognized the passenger, who was sliding down in the backseat, as fitting the description of the person given on the radio. He and his partner exited their patrol car and motioned for the taxi to stop. The taxi stopped, the officers drew their weapons, and Officer Vigil saw appellant, who had a clear plastic baggie his right hand, reach under the seat with it. Appellant was ordered out of the taxi, and Officer Vigil's partner retrieved the baggie from under the backseat where appellant had placed it. Appellant was arrested and taken to the police station.

The State did not call the complainant, Rose Marie Belle. When the State's chemist witness testified that the substance in the baggie was cocaine and the State offered it into evidence, appellant objected to its admission, asking the trial court for a ruling on the motion to suppress. The trial court overruled appellant's motion to suppress.

### Invited Error

Appellant now complains that the trial court erred in overruling his motion to suppress because the cocaine was the product of either a warrantless arrest unsupported by probable cause or of an invalid investigatory detention unsupported by reasonable suspicion. Specifically, appellant asserts, "The State failed to present any evidence that they sought appellant in the first place in connection with any offense."

Having sought and secured the trial court's ruling preventing the State from presenting evidence of the initial conversation between complainant and the police about her report of appellant's assault on her, appellant cannot now be heard to complain about a lack of evidence relative to probable cause or reasonable suspicion to pursue appellant. It is clear from this record that the reason the State did not present such evidence was out of obedience to the trial court's order not to go into the matter. The trial court's order not to go into the matter resulted from appellant's own motion to exclude the evidence on the ground that such evidence of assault would be "prejudicial" and "irrelevant" in his trial on the possession of cocaine charge.

Appellant's points of error one through four should be overruled based on the doctrine of invited error. *See Hill v. State,* 913 S.W.2d 581, 586 (Tex.Crim.App.1996) (defendant may not complain of submission of issue of deadly weapon at punishment phase where he objected to its submission at guilt phase); *Tucker v. State,* 771 S.W.2d 523, 534 (Tex. Crim.App.1988) (defendant may not complain about erroneous jury charge he requested);

*Ex parte Hargett,* 827 S.W.2d 606, 607, 608 (Tex.App.—Austin 1992, pet. ref'd) (defendant may not complain of failure of trial court to hold evidentiary hearing where defendant asked writ to be determined on record alone). For this reason, I concur with the majority opinion.