Perez v. SOT

















NUMBER 13-02-00422-CR

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI – EDINBURG
                                                                                                                       

MARIA VIRGINIA PEREZ,                                                            Appellant,

v.

THE STATE OF TEXAS,                                                                Appellee.
                                                                                                                       

On appeal from the 197th District Court of Cameron County, Texas.
                                                                                                                       

O P I N I O N

Before Justices Hinojosa, Yañez, and Garza
Opinion by Justice Hinojosa

          Pursuant to a plea agreement, appellant, Maria Virginia Perez, pleaded guilty to the
offense of reckless injury of a child.


 The trial court found her guilty and, in accordance
with the plea agreement, assessed appellant’s punishment at fifteen years imprisonment. 
The trial court has certified that this “is a plea-bargain case, but matters were raised by
written motion filed and ruled on before trial and not withdrawn or waived, and the
defendant has the right of appeal.” See Tex. R. App. P. 25.2(a)(2). By two issues,
appellant contends: (1) the trial court erred in denying her motion to suppress; and (2) the
trial court violated her constitutional right to a competency hearing. We affirm.
A. Factual Background
          On March 5, 2001, Officer Oracio Ramirez, Jr., of the Harlingen Police Department,
responded to a 911 call at 1510 North Commerce in Harlingen, Texas. Upon his arrival,
Ramirez encountered a man holding a baby, and an adult female and young boy standing
near the man. The man informed Ramirez that the baby had stopped breathing and asked
him for help. Ramirez determined that the baby was not breathing, had no pulse, and was
unresponsive. Shortly thereafter, Officer Margarito De la Fuente arrived, and the officers
began to perform CPR. Shortly thereafter, EMS and the fire department arrived and took
care and custody of the child. The child was transported to the hospital, but did not
survive.
          After the medical emergency personnel arrived on the scene, the officers began to
interview the adults. Ramirez interviewed the male, who identified himself as Elias Perez,
the father of the infant. He told Ramirez that he had walked to a nearby pay telephone to
call the electric company about service for their trailer, and he had left the infant with
appellant in the trailer. He said he was at the pay telephone for approximately seven
minutes when appellant came running toward him with the baby, informing him that the
baby was not breathing. He called 911.
          De la Fuente interviewed appellant, Maria Virginia Perez. She told De la Fuente that
both she and her husband had walked to the pay phone to call the electric company,
leaving the baby alone in the trailer. She said they had left the baby because she was sick,
and they did not want to expose her to the cold. She said that after about five minutes she
had returned to the trailer to check on the baby and had found a clear plastic bag over the
baby’s nose. She also saw blood on the baby’s nose. After the officers conferred and
determined they had conflicting stories, De la Fuente called and asked that his supervisor,
Sergeant Valdemar Guajardo, report to the scene. 
          Upon his arrival, Guajardo spoke with both officers and was advised that appellant
and her husband had given conflicting stories. Guajardo told De la Fuente to transport
appellant to the station for further investigation. Appellant was placed in the back of a
patrol unit, unhandcuffed, along with her son, and transported to the police station between
7:45 p.m. and 8:15 p.m.
          At approximately 9:30 p.m., Detective Miryam Anderson met with appellant at the
police station. After reading appellant her Miranda rights and obtaining her signature on
the rights card, Anderson began to take appellant’s first statement. Appellant gave an
exculpatory statement. However, after completing the statement, appellant appeared as
if she wanted to say something else. Anderson asked appellant if she had anything to add. 
After hesitating for a moment, appellant stated, “No that’s how it happened, the way I said
it.”
          At this point, Detective Richard Turner entered the room, reviewed appellant’s
statement, and advised appellant that he and Anderson were going to leave the room to
discuss the information the police had obtained, and that when Anderson returned, he
wanted appellant to tell her the truth. A few minutes later, Anderson returned to the
interview room. Anderson told appellant that if she had any information regarding how her
daughter was injured, it was important that she reveal that information. Appellant then
gave her second statement. In this statement, appellant admitted that she placed a plastic
bag over her daughter’s face for approximately four minutes, until she saw blood coming
out of the child’s nose.
B. Motion To Suppress
            In her first issue, appellant contends the trial court erred in denying her motion to
suppress her oral statement because it was obtained pursuant to an illegal arrest. The
State argues that appellant was not under arrest, but detained for questioning at the time
she gave her statement. In the alternative, the State argues that appellant was properly
arrested because probable cause existed to believe that appellant had caused serious
bodily injury to a family member. See Tex. Code Crim. Proc. Ann. art. 14.03(a)(4) (Vernon
Supp. 2004). 
          An accused seeking to suppress evidence on the basis of illegal police conduct
bears the burden of proof to rebut a presumption of proper police conduct. See McGee
v. State, 105 S.W.3d 609, 613 (Tex. Crim. App. 2003). The accused satisfies the burden
if she proves that the police acted without a warrant. Id. The burden then shifts to the
State to either produce a warrant or prove the reasonableness of the challenged conduct. 
Id. If the State produces a warrant, the burden of proof again shifts to the accused to show
the invalidity of the warrant. Russell v. State, 717 S.W.2d 7, 9-10 (Tex. Crim. App. 1986)
(op. on reh'g). If the State is unable to produce a warrant, it must prove the
reasonableness of the search or seizure. Id. The State may demonstrate reasonableness
by proving probable cause. See McGee, 105 S.W.3d at 613 (State meets burden in
suppression hearing by proving one of statutory exceptions to warrant requirement). The
State must prove probable cause by a preponderance of the evidence. Porter v. State,
938 S.W.2d 725, 727-28 (Tex. App.—Houston [1st Dist.] 1996, pet. ref'd).
          When we review a motion to suppress, we give great deference to the trial court’s
findings of historical facts. Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). 
We review de novo mixed questions of law and fact that do not turn on an evaluation of
credibility and demeanor. Id. We will sustain the trial court’s ruling admitting the evidence
if the ruling is reasonably supported by the record and correct on any theory of law
applicable to the case. Willover v. State, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002). This
is so even if the trial judge gives the wrong reason for her decision. State v. Ross, 32
S.W.3d 853, 855-56 (Tex. Crim. App. 2000) (citing Romero v. State, 800 S.W.2d 539, 543
(Tex. Crim. App. 1990)).
          Whether appellant’s confession resulted from an investigative detention or an arrest
is resolved by determining whether appellant was in custody at the time she gave her
confession. The following situations generally constitute custody: (1) when the suspect is
physically deprived of her freedom of action in any significant way; (2) when a law
enforcement officer tells the suspect she cannot leave; (3) when a law enforcement officer
creates a situation that would lead a reasonable person to believe that her freedom of
movement has been significantly restricted; and (4) when there is probable cause to arrest
and a law enforcement officer does not tell the suspect that she is free to leave. Dowthitt
v. State, 931 S.W.2d 244, 255 (Tex. Crim. App. 1996). 
          Officer De la Fuente told appellant that she had to go to the police station for further
investigation. Appellant was placed in the back of a police car, transported to the station,
and remained in the squad room until Detective Anderson arrived. At that time, appellant
and Anderson entered an eight-foot by eight-foot interview room, and appellant was read
her Miranda rights. Appellant was in the interview room for approximately three and one-half to four hours. She was not told that she could refuse to go to the station, or that she
could leave once she arrived at the station. In fact, two officers testified that probable
cause existed to restrain her liberty, and if appellant had said she wanted to leave, she
would have been placed under formal arrest. Under these facts, we conclude appellant
was in custody. Therefore, we must determine whether the officers had probable cause
to arrest her.
          A police officer may arrest, without a warrant, a person the officer has probable
cause to believe has committed an assault resulting in bodily injury to a member of the
person’s family or household. Tex. Code Crim. Proc. Ann. art. 14.03 (a)(4) (Vernon Supp.
2004). Probable cause exists where the police have reasonably trustworthy information,
considered as a whole, sufficient to warrant a reasonable person to believe a particular
person has committed, or is committing, an offense. Hughes v. State, 24 S.W.3d 833, 838
(Tex. Crim. App. 2000); Guzman, 955 S.W.2d at 87. Probable cause deals with
probabilities; it requires more than mere suspicion, but far less evidence than that needed
to support a conviction or even that needed to support a finding by a preponderance of the
evidence. Hughes, 24 S.W.3d at 838; Guzman, 955 S.W.2d at 87. In reviewing a
warrantless arrest to determine the existence of probable cause, we look to the facts
known to the officer at the time of the arrest. Amores v. State, 816 S.W.2d 407, 415 (Tex.
Crim. App. 1991). Whether probable cause exists is determined by considering the totality
of the circumstances. Id. at 413. 
          When Ramirez and De la Fuente arrived at the scene, they observed blood coming
out of the baby’s mouth and nose. They questioned both parents regarding the
circumstances surrounding the baby’s condition and found that the parents’ stories were
in conflict. Mr. Perez said that he had walked to a nearby pay telephone to call the electric
company about service for their trailer, and that he had left the infant with appellant in the
trailer. Appellant said that: (1) both she and her husband had walked to the pay telephone
to call the electric company, (2) they had left the baby alone in the trailer, and (3) she had
returned to the trailer about five minutes later to check on the baby. However, both
versions clearly showed that appellant was the last person to be with the baby. The officers
also had knowledge that the baby had a plastic bag on her face.
            Considering the totality of the circumstances, and reviewing the facts known to the
officers at the time of the arrest, we conclude the evidence constituted reasonably
trustworthy information, considered as a whole, sufficient to warrant a reasonable person
to believe that appellant had committed an assault resulting in bodily injury to the baby, a
member of appellant’s family. See Tex. Code Crim. Proc. Ann. art. 14.03(a)(4) (Vernon
Supp. 2004). Accordingly, we overrule appellant’s first issue.
C. Competency Hearing
          In her second issue, appellant contends the trial court refused to give her an
adequate hearing to determine her competency to stand trial as required by the United
States Constitution.
          The due process right to a fair trial prevents the government from subjecting a
person to trial whose “mental condition is such that he lacks the capacity to understand the
nature and object of the proceedings against him, to consult with counsel, and to assist in
preparing his defense.” Drope v. Missouri, 420 U.S. 162, 171 (1975); Alcott v. State, 51
S.W.3d 596, 598 (Tex. Crim. App. 2001). Thus, to protect a criminal defendant’s
constitutional rights, a trial court must inquire into the accused’s mental competence once
the issue is sufficiently raised. McDaniel v. State, 98 S.W.3d 704, 709 (Tex. Crim. App.
2003) (citing Pate v. Robinson, 383 U.S. 375, 378 (1995)).
          These due process standards are built into article 46.02 of the code of criminal
procedure. Id. Under section 1A(a) of article 46.02, “[a] person is incompetent to stand
trial if the person does not have: (1) sufficient present ability to consult with the person’s
lawyer with a reasonable degree of rational understanding; or (2) a rational as well as
factual understanding of the proceedings against the person.” Tex. Code Crim. Proc. Ann.
art. 46.02 § 1A(a) (Vernon Supp. 2004). Section 2 of article 46.02 provides:
(a)      The issue of the defendant’s incompetency to stand trial shall be
determined in advance of the trial on the merits if the court
determines there is evidence to support a finding of incompetency to
stand trial on its own motion or on written motion by the defendant or
his counsel filed prior to the date set for trial on the merits asserting
that the defendant is incompetent to stand trial.
 
(b)      If during the trial evidence of the defendant’s incompetency is brought
to the attention of the court from any source, the court must conduct
a hearing out of the presence of the jury to determine whether or not
there is evidence to support a finding of incompetency to stand trial. 
 
Tex. Code Crim. Proc. Ann. art. 46.02 § 2(a), (b) (Vernon Supp. 2004).
          Under section 2, the trial court is required to conduct a non-jury hearing, referred to
as a “Section 2 inquiry,” on whether to hold a jury trial on the defendant’s competency “if
evidence of the defendant’s incompetency is brought to the attention of the court from any
source.” McDaniel, 98 S.W.3d at 710. A Section 2 or “competency inquiry” is required only
if the evidence brought to the judge’s attention raises a bona fide doubt in the judge’s mind
about the defendant’s competency to stand trial. Id. Evidence is usually sufficient to
create a bona fide doubt if it shows “recent severe mental illness, at least moderate
retardation, or truly bizarre acts by the defendant.” Id. When such a bona fide doubt does
exist, the court must conduct the Section 2 competency inquiry to determine whether there
is “some evidence” to support a finding of incompetency, and if so, to commence a Section
4 competency hearing before a jury. Id. The requirements of each step must be fulfilled
before moving on to the next. Id. 
          In the present case, appellant filed a motion to “Appoint Psychologist to Evaluate
Defendant for Insanity & Competency and to Assist in the Preparation and Presentation
of Defense” on June 15, 2001. Appellant was examined by Dr. David Moron and Dr.
James A. Freeberg. Both doctors testified at the January 30, 2001 hearing on appellant’s
motion to suppress. Dr. Freeberg testified as appellant’s witness, and Dr. Moron testified
as a State witness. Dr. Freeberg testified that appellant has an IQ associated with mild
mental retardation. Appellant’s functional capacity, however, falls within the borderline
range. The borderline range is above the mildly mentally retarded range, but below the low
average range. Dr. Moron agreed with Dr. Freeberg’s assessment of appellant’s mental
capacity as being in the borderline range. Both doctors testified that appellant was
competent to stand trial and had the ability to assist her attorney in her defense. The
record reflects that appellant failed to present evidence to the trial court which raised a
bona fide doubt about her competency to stand trial. Therefore, the trial court was relieved
of the requirement to hold a Section 2 “competency inquiry.” Appellant’s second issue is
overruled.
          The judgment of the trial court is affirmed.
 
                                                                           FEDERICO G. HINOJOSA
                                                                           Justice


Publish. See Tex. R. App. P. 47.2(b).

Opinion delivered and filed this the
11th day of March, 2004.