Opinion issued May 27, 2004








     





In The
Court of Appeals
For The
First District of Texas




NO. 01-03-00407-CR




ANTONIO ADOLPHO MIRELES, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 262nd District Court
Harris County, Texas
Trial Court Cause No. 920851 




MEMORANDUM OPINION
          After the trial court denied his motion to suppress, appellant, Antonio Adolpho
Mireles, pled guilty to possession with intent to deliver at least 400 grams of cocaine. 
Pursuant to the plea agreement, the trial court sentenced appellant to 25 years in
prison and a $1 fine. In his sole issue, appellant contends that the trial court erred in
denying his motion to suppress.
          We affirm. 
Background
          During a drug interdiction, Houston Police Department narcotics Officers D.
Green and T. R. Walker found two kilograms of cocaine in the car of Angela Cochran
and her male companion. The couple told the officers that they had obtained the
cocaine from an individual at 1730 Saxon Street. They described the individual as
a young, “chubby” Hispanic male, named “Tony,” who had a “buzz” haircut and a
“unibrow”; that is, one eyebrow that crossed above both eyes. The couple also told
the officers that the individual would be waiting at the Saxon address for them to
return with the money for the two kilograms of cocaine seized by the officers. 
Cochran and her companion also told the officers that it was “possible” that
additional cocaine might be located at the Saxon address. Based on this information,
the officers decided to conduct a surveillance that same day of the residence at 1730
Saxon. Numerous officers set up surveillance of a house located at that address. 
          Officer Green drove by the residence and observed about eight persons in the
front yard. He saw appellant standing in the driveway talking on a cell phone,
watching passing traffic. Appellant matched the description provided by Cochran and
her companion. Officer Green noted that appellant was the only male in the yard who
had a “unibrow” as had been described by the couple.
          Officer Walker set up surveillance from a school located about 50 yards from
the residence. He noticed a number of persons “milling around” near the garage. 
Officer Walker saw appellant walk down the driveway and look around. Appellant
looked in the direction of Officer Walker. Appellant then got in a car and drove
around the block before returning to the residence. Another individual from the
residence drove by Officer Walker, slowed down, and stared.
          Suspecting that appellant and his companions were aware of the police
presence, the officers decided to do a “knock and talk.” As the police approached the
residence in full raid gear, the persons in the yard of the residence noticed the
officers. Appellant picked up a box from near the garage and began running with it. 
Appellant then stopped and handed it to Steve Hernandez. Carrying the box,
Hernandez walked along the side the house toward the backyard. 
          Narcotics Officer W. Rios, the supervising officer on the scene, was not
initially in a position where he could see appellant’s residence. But, when he heard
Officer Walker state over the radio that the persons at the residence appeared to be
aware of the police presence, Officer Rios proceeded to the Saxon address to
participate in the investigation. Officer Rios then heard Officer Walker say that
someone at the location was running with a cardboard box. As he approached the
residence through a neighbor’s yard, Officer Rios saw Hernandez running with a
cardboard box toward a small building located in the backyard of the residence. 
          Through an open gate, Officer Rios told Hernandez to “stop.” Hernandez
dropped the box in the backyard and turned toward Officer Rios. The box had an
open top without a lid. In the box, Officer Rios saw cigarette cartons, which appeared
to contain cocaine. A field test revealed that the cigarette cartons in the box did
contain cocaine, which was determined to weigh seven kilograms. 
Motion to Suppress
          In his sole issue, appellant complains that the trial court erred in denying his
motion to suppress. Appellant contends that the search and seizure was unreasonable
because the officers lacked probable cause to enter his yard and make a warrantless
seizure of the cocaine.



A.      Standard of Review
          In reviewing the trial court’s ruling on a motion to suppress evidence, we apply
a bifurcated standard of review, giving “almost total deference to a trial court’s
determination of historic facts” and reviewing de novo the court’s application of the
law of search and seizure. Carmouche v. State, 10 S.W.3d 323, 327 (Tex. Crim. App.
2000) (citing Guzman v. State, 955 S.W.2d 85, 88-89 (Tex. Crim. App. 1997)). If the
issue involves the credibility of a witness, such that the demeanor of the witness is
important, then greater deference will be given to the trial court’s ruling on that issue. 
Guzman, 955 S.W.2d at 89. The amount of deference that we should give to a trial
court’s ruling on a motion to suppress will depend upon whether the trial court is in
a better position to decide the issue before it. Id. If the issue is one of application of
law to facts, and the ultimate resolution of that issue does not turn on an evaluation
of credibility and demeanor of a witness, then we may review that issue de novo. Id.
at 89. When the trial court does not make explicit findings of historical facts, as here,
we review the evidence in the light most favorable to the trial court’s ruling. Walter
v. State, 28 S.W.3d 538, 540 (Tex. Crim. App. 2000). In conducting our review, we
consider the evidence before the trial court when it ruled on the motion to suppress
evidence. Weatherred v. State, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000).
B.      Warrantless Search and Seizure: Probable Cause Required
          The Fourth Amendment of the United States Constitution and article I, section
9 of the Texas Constitution forbid unreasonable searches and seizures. U.S. Const.
amend. IV; Tex. Const. art. I, § 9. When police enter a residence without consent
of its residents, that entry constitutes a search. McNairy v. State, 835 S.W.2d 101,
106 (Tex. Crim. App. 1991). Federal and Texas state courts have held that a police
search of a home without a warrant is presumptively unreasonable.


 Beaver v. State,
106 S.W.3d 243, 246 (Tex. App.—Houston [1st Dist.] 2003, pet. filed). Here, the
State concedes that the police officers did not have a search warrant for appellant’s
property. 
          To justify a warrantless search, the State must show the existence of probable
cause at the time the search was made, and the existence of exigent circumstances,
which made the procuring of a warrant impracticable. McNairy, 835 S.W.2d at 106;
Beaver, 106 S.W.3d at 247. Exigent circumstances justifying a warrantless entry
include (1) rendering aid or assistance to persons whom the officers reasonably
believe are in need of assistance, (2) preventing the destruction of evidence or
contraband, and (3) protecting the officers from persons whom they reasonably
believe to be present and armed and dangerous. McNairy, 835 S.W.2d at 107. 
Besides arguing that it had the requisite probable cause, the State in this case argued
and presented evidence that exigent circumstances, i.e., destruction of the cocaine
evidence, made obtaining a search warrant impracticable at the time of the search.
          On appeal, appellant does not dispute that exigent circumstances made
obtaining a warrant impracticable in this case. He only challenges whether the
officers had sufficient probable cause to believe that cocaine would be found at his
residence. We begin by noting that determinations of probable cause on appeal
should be reviewed de novo. See Guzman, 955 S.W.2d at 87; Beaver, 106 S.W.3d
at 246. 
          Probable cause to search exists when reasonably trustworthy facts and
circumstances within the knowledge of the officer on the scene would lead a person
of reasonable prudence to believe that the instrumentality of a crime or evidence of
a crime will be found. See McNairy, 835 S.W.2d at 106; Porter v. State, 938 S.W.2d
725, 728 (Tex. App.—Houston [1st Dist.] 1996, pet. ref’d). It exists when the facts
are sufficient to justify the conclusion that the property that is to be the object of the
search is probably in the area to be searched. See Rojas v. State, 797 S.W.2d 41, 43
(Tex. Crim. App. 1990). The determination of probable cause at the time of the
questioned event is viewed from the “totality of the circumstances.” See Angulo v.
State, 727 S.W.2d 276, 278 (Tex. Crim. App. 1987); Porter, 938 S.W.2d at 728.           In this case, Officers Green, Walker, and Rios each testified at the suppression
hearing that probable cause to obtain a search warrant of 1730 Saxon did not exist
when they went to the location to conduct surveillance. In fact, the officers testified
that obtaining probable cause was the purpose of the surveillance. Our review of the
record indicates that the officers developed sufficient probable cause after setting up
the surveillance.
          The State presented evidence showing that Officers Green and Walker were
told by Angela Cochran and her male companion that they had obtained two
kilograms of cocaine at 1730 Saxon Street from a young, chubby, Hispanic male
named “Tony.” Officers Walker and Green testified that Cochran and her companion
had described “Tony” as having “one eyebrow.” The officers also testified that the
informants had said that there was “possibly” additional cocaine at the Saxon location
and that “Tony” would be waiting for them to return to the location with payment for
the two kilograms of cocaine. 
          Texas follows the “totality of the circumstances” approach in evaluating
informant-based probable cause. Johnston v. State, 99 S.W.3d 269, 272 (Tex.
App.—Texarkana 2003, no pet.) (citing Eisenhauer v. State, 678 S.W.2d 947, 952
(Tex. Crim. App. 1984), overruled on other grounds, Heitman v. State, 815 S.W.2d
681 (Tex. Crim. App. 1991)). Under the totality of the circumstances approach, an
informant’s veracity, reliability, and basis of knowledge are all highly relevant in
determining the value of a tip. Id. These elements, however, are not entirely separate
and independent requirements to be rigidly exacted in every case. Id. Rather, they
are simply closely intertwined issues that may usefully illuminate the commonsense,
practical question of whether there is probable cause to believe that contraband or
evidence is located in a particular place. Id. Though information supplied by
confidential informants standing alone cannot supply officers with sufficient probable
cause, probable cause may arise from information supplied by a confidential
informant provided the information is corroborated. Id.
          First, we note that the informants in this case were not “confidential.” Officers
Green and Walker identified one of the informants as “Angela Cochran” at the
suppression hearing. The officers could not remember the name of Cochran’s
companion but said that his name was readily available in the report filed in
conjunction with the seizure of the two kilorams of cocaine.
          Moreover, the State presented evidence showing the basis of the informants’
knowledge and the reliability of the tip. Specifically, the informants’ information
regarding the presence of cocaine at the 1730 Saxon address was based on personal,
first hand knowledge, not rumor or hearsay. See Hackleman v. State, 919 S.W.2d
440, 447 (Tex. App.—Austin 1996, pet. ref’d, untimely filed). Namely, the
informants had personally obtained the two kilograms of cocaine found in their car
from an individual at the Saxon address. 
          Additionally, the State presented evidence establishing the veracity and
reliability of the information supplied by the informants. Particularly, the State’s
evidence showed that the surveillance conducted by the officers corroborated the
information supplied by Cochran and her companion. Officers Green and Walker
testified that, when they saw appellant at the Saxon address, he matched the detailed,
physical description given by the informants of the man from whom the two
informants had obtained the cocaine. The officers also testified that appellant’s
behavior was consistent with the information that they had received from the
informants that the narcotics supplier at the residence would be waiting for them to
return with payment for the two kilograms of cocaine. Specifically, the officers
testified that appellant was standing in front of the residence, talking on a cell phone,
and watching passing traffic.
          Appellant challenges the informants’ reliability and veracity because the
informants only gave information to the police after two kilograms of cocaine had
been found in their car. Notwithstanding appellant’s contrary contention, the
informants’ statements that they had obtained the two kilograms from appellant at his
residence was a statement against their penal interests that bolstered their veracity in
establishing probable cause. See Hackelman, 919 S.W.2d at 447; Lowery v. State,
843 S.W.2d 136, 140 (Tex. App.—Dallas 1992, pet. ref’d).
          The officers also testified that the persons at the Saxon address appeared to
notice Officer Walker’s presence. At that point, the group “started moving around”
more and were making an obvious effort to observe Officer Walker. Testimony was
presented that appellant got in his car and drove around the block. Another man from
the residence drove past Officer Walker and slowed down to look at the officer. 
          The State also presented evidence that, as they approached the residence in
police raid gear, the officers observed appellant pick up a cardboard box and run with
it. Appellant handed the box to Hernandez, who then ran with it toward a small
building in the backyard of the residence. 
          Furtive movement, and certainly flight, is a strong indicia of mens rea. See
Smith v. State, 542 S.W.2d 420, 421 (Tex. Crim. App. 1976); Simpson v. State, 668
S.W.2d 915, 918 (Tex. App.—Houston [1st Dist.] 1984, no pet.) (involving probable
cause for making warrantless arrest when suspects fled after seeing police). Thus, if
a significant degree of suspicion concerning a particular person already exists, the
flight and furtive movement of that person on the approach of police officers may be
taken into account, and may elevate the pre-existing suspicion to the requisite
constitutional level of probable cause. See Smith, 542 S.W.2d at 421; Simpson, 668
S.W.2d at 918.
          Considering the totality of the circumstances in this case, we conclude that
probable cause existed for the police officers to make a warrantless entry onto
appellant’s property to seize the cocaine. In addition to the detailed and corroborated
information supplied by the two informants, appellant and his companions conducted
counter-surveillance and made furtive movements when they suspected police
presence. Once the police made their presence known, appellant picked up a box, ran
with it, and then gave it to Hernandez who also ran carrying the box. Although each
of these facts considered alone may not support probable cause, when considered as
a whole, they were sufficient to supply the officers with the requisite probable cause
for the officers to enter appellant’s yard and seize the cocaine.



          We hold that the trial court’s denial of appellant’s motion to suppress is
supported by the evidence in the record. We overrule appellant’s sole point of error.
Conclusion
          We affirm the judgment of the trial court.





                                                             Laura Carter Higley
                                                             Justice

Panel consists of Justices Taft, Hanks, and Higley.

Do not publish. Tex. R. App. P. 47.2(b).