# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-06-00248-CR

**Gregory Stuart Tapper, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE COUNTY COURT AT LAW OF BURNET COUNTY, NO. M19517, HONORABLE WILLIAM R. SAVAGE, JUDGE PRESIDING

## M E M O R A N D U M  O P I N I O N

The appellant, Gregory Tapper, was arrested for driving while intoxicated in February 2005. *See* Tex. Penal Code Ann. § 49.04 (West 2003). After a jury trial, the appellant was found guilty of the charged offense and was placed on two years' probation. The appellant appeals his conviction and argues that the trial court erred by denying his motion to suppress evidence of his field sobriety tests and his breath-test results and rejecting his proposed jury instruction concerning the legality of his arrest. We will reverse the judgment of the trial court.

### BACKGROUND

In February 2005, paramedics and police officers were called to the scene of a one-car roll-over accident involving the appellant. Paramedic Jeremy Driver was the first to arrive on the scene. Driver later testified that while he was talking with the appellant, he observed beer cans around and inside the appellant's vehicle. After noticing the cans, Driver asked the appellant if he

had drunk any alcohol that day, and the appellant admitted that he had.  Driver also testified that the appellant was fully alert during the encounter.  Further, Driver stated that because the appellant had injured his hand in the accident, he treated and bandaged the appellant's hand in the ambulance.

Officer Daniel Grivas arrived on the scene soon after Driver and began questioning the appellant regarding the cause of the accident.  Shortly after initiating questioning, Grivas read the appellant his *Miranda* rights, and the appellant then continued to describe the events leading up to the accident.  *See Miranda v. Arizona*, 384 U.S. 436, 479 (1966) (holding that accused must be informed, prior to questioning, that "he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him").  Grivas testified that while the appellant was speaking, Grivas noticed that the appellant smelled strongly of alcohol and that the appellant admitted that he had consumed a couple beers earlier in the day.

Soon after Grivas finished questioning the appellant, Officer Shannon Simpson arrived on the scene.[1]  Simpson began to ask the appellant questions regarding the accident.  As a preliminary matter, Simpson asked the appellant to produce his insurance information.  In his testimony, Simpson stated that when the appellant began looking through his wallet for the information, he either dropped several items from his wallet or dropped his wallet onto the floor of the ambulance.  Simpson further testified that while he was talking with the appellant, he noticed that the appellant smelled like alcohol.  In his report made at the scene, Simpson did not indicate that the

---

[1]  Because Simpson was wearing a microphone, many of his statements and the appellant's statements were recorded onto a videotape by a camera inside Simpson's car.  The videotape is part of the record in this appeal.

appellant's speech was slurred or that the appellant had any difficulty walking. Other than the appellant's dropping his wallet, Simpson testified that he did not observe any behavior by the appellant at the scene that was consistent with being intoxicated. Grivas informed Simpson that the appellant had been read his *Miranda* rights and was being detained but was not under arrest.

Shortly thereafter, Simpson decided to ask the appellant to perform several sobriety tests, but rather than asking the appellant to perform the tests at the scene, Simpson decided to take the appellant to jail to perform the tests. Simpson testified that he wanted to have the appellant perform the tests at the jail because he was concerned that performing the tests at the scene would have been unsafe due to the heavy traffic in the area and the fact that the road was very narrow and had no shoulder.[2] As a result, Simpson handcuffed the appellant, placed him in the patrol car, and transported him to the jail. On the way, Simpson informed the appellant that he was being detained for further tests but did not say that the appellant was under arrest. In his testimony, Simpson also stated that he was not intending to arrest the appellant at that time. On the way to the jail, the appellant volunteered that he had consumed a couple of beers earlier that night. In response to a question by the appellant, Simpson informed the appellant of the consequences of failing a breath test.

When they arrived at the jail, Simpson read the appellant his *Miranda* rights. In addition, Simpson also read to the appellant the contents of a DIC-24 form, which explains to an individual who is about to take a breath test that he is under arrest and also explains the legal

---

[2] In the video, Simpson informed the appellant that the reason that Simpson was transporting the appellant to the jail was because the intoxilyzer was at the jail.

consequences of failing or refusing to take the test. Simpson then asked the appellant to perform three sobriety tests: (1) the horizontal-gaze-nystagmus test, (2) the walk-and-turn test, and (3) the one-leg-stand test. The appellant performed well on the walk-and-turn test and the one-leg-stand test, but Simpson noted that the appellant exhibited all six indicators of intoxication during the nystagmus test. The appellant then agreed to take two breath tests, and the results showed that the appellant had a blood-alcohol level that was well over the legal limit. After the appellant finished taking the breath tests, Simpson told the appellant that he was under arrest for the crime of driving while intoxicated.

Prior to his trial, the appellant filed motions to suppress any evidence obtained after he was taken from the scene of the accident, including the results of his sobriety tests. In his motions, the appellant argued that by taking him to jail to perform sobriety tests, the police had improperly arrested him without probable cause. Therefore, he contended that any evidence obtained after his arrest should be excluded. Further, he argued that he did not voluntarily consent to taking a breath test. Ultimately, the trial court denied the motions to suppress.

During the trial, the appellant objected to the admission of evidence obtained after he was taken from the scene of the accident, but the trial court overruled those objections. In addition, the appellant also requested that an instruction be given to the jury explaining that the jury should not consider the results of his field sobriety tests and breath tests if he was arrested without probable cause. The trial court denied the appellant's proposed jury instruction.

At the end of the trial, the jury concluded that the appellant was guilty of the crime of driving while intoxicated.

4

**STANDARD OF REVIEW**

When evaluating a trial court's ruling on a motion to suppress, we defer to the court's factual determinations, but we review the court's application of the law to the facts de novo. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). When making the ultimate determination of whether the evidence should have been suppressed, we will sustain the court's ruling admitting the evidence if the ruling is reasonably supported by the record and correct on any theory of law applicable to the case. *Willover v. State*, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002); *Ness v. State*, 152 S.W.3d 759, 762 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd). When, as here, the trial court does not make explicit findings of fact, we review the evidence in the light most favorable to the court's ruling and assume that the court made findings that are supported by the record and buttress its conclusion. *Carmouche v. State*, 10 S.W.3d 323, 327-28 (Tex. Crim. App. 2000); *see also Wiede v. State*, 214 S.W.3d 17, 24-25 (Tex. Crim. App. 2007) (stating that appellate courts should view evidence in light most favorable to trial court's ruling on motion to suppress because trial court is able to observe demeanor and appearance of witnesses).

**DISCUSSION**

In his first issue on appeal, the appellant argues that the district court erred when it admitted evidence obtained after he was taken from the scene of the accident. Specifically, he complains about the admission of evidence concerning the field sobriety tests and the results of his breath tests. The appellant argues that this evidence should have been excluded because at the time he was taken into custody, there was no probable cause to justify his arrest. *See Porter v. State,* 938 S.W.2d 725, 728 (Tex. App.—Houston [1st Dist.] 1996, pet. ref'd) (stating that State has burden

5

to prove that probable cause existed to support warrantless arrest). In making this assertion, the appellant insists that he was arrested when he was handcuffed and transported to jail or when Simpson read the contents of the DIC-24 form to him at the jail. The appellant insists that at neither of those times was there probable cause to justify his arrest. Moreover, the appellant argues that Simpson did not have probable cause to arrest, if ever, until after the appellant took the field sobriety and breath tests. As support for this assertion, the appellant points to Simpson's statements made while transporting the appellant to the jail indicating that the appellant was not under arrest and to Simpson's testimony that he did not intend to arrest the appellant when Simpson transported the appellant to jail. The appellant also points to the fact that prior to taking the breath tests, he passed both the walk-and-turn and one-leg-stand field sobriety tests.

To properly address the appellant's claim, we must first determine at what point he was arrested. In determining whether an individual has been placed in the custody of authorities, courts must look to the objective circumstances surrounding the detainment. *Stansbury v. California*, 511 U.S. 318, 323 (1994); *Dowthitt v. State*, 931 S.W.2d 244, 255 (Tex. Crim. App. 1996). Unless they are communicated to the detained individual, the subjective views held by the police officers concerning whether the individual was in custody are not relevant to the determination. *Dowthitt*, 931 S.W.2d at 254. A person is deemed to be in custody only if a reasonable person would believe that, under the relevant circumstances, his freedom of movement was restricted by the same amount associated with a formal arrest. *Id.* An individual will generally be deemed to be in the custody of authorities in the following circumstances:

> (1) when the suspect is physically deprived of his freedom of action in any significant way, (2) when a law enforcement officer tells the suspect that he cannot leave,

6

(3) when law enforcement officers create a situation that would lead a reasonable person to believe that his freedom of movement has been significantly restricted, and (4) when there is probable cause to arrest and law enforcement officers do not tell the suspect that he is free to leave.

*Id.* at 255.

Based on the evidence presented at trial, we must conclude that a reasonable person under the circumstances would have believed that his freedom of movement was being restricted at the same level associated with a formal arrest at the time that the appellant was handcuffed and placed in Simpson's car. First, the appellant was physically deprived of his freedom of movement when he was handcuffed. While it is true that placing handcuffs on an individual on its own does not necessarily constitute placing that person under arrest, *see Ramirez v. State*, 105 S.W.3d 730, 739 (Tex. App.—Austin 2003, no pet.), the handcuffing is not the only factor weighing in favor of our determination. Second, prior to being handcuffed, the appellant was read his *Miranda* rights by officer Grivas,[3] and Simpson was informed of that fact by Grivas. Third, although Simpson did not state that the appellant was under arrest, Simpson did place the appellant in the police car and tell him that he was being detained and taken to the jail to undergo testing for intoxication. *See Hardinge v. State*, 500 S.W.2d 870, 872-73 (Tex. Crim. App. 1973) (concluding that officer arrested Hardinge even though officer told Hardinge that he was not under arrest).[4]

---

[3] In the video, the appellant admitted that he was read his *Miranda* rights but stated that he thought that it was a paramedic that read him those rights. However, the appellant does not make this assertion on appeal.

[4] We note as a matter of some significance our disapproval of the idea that an individual is merely being detained when he is handcuffed, placed in the back of a police car, and transported to jail. The concept of a detention—meaning preventing an individual from leaving an area—cannot

Having concluded that the appellant was arrested when he was placed into the car, we must now determine whether the arrest was proper. Police officers may stop and briefly detain an individual if under the totality of the circumstances, the officer knows of specific articulable facts that, when combined with the officer's training, experience, and personal knowledge and the rational inferences from those facts, lead one to conclude that the person detained is, has been, or soon will be engaged in criminal activity. *Woods v. State*, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997); *Davis v. State*, 947 S.W.2d 240, 244 (Tex. Crim. App. 1997). The officer must point to something that would lead a reasonable person to believe that the detainee was engaged in criminal conduct. *See Davis*, 947 S.W.2d at 244. However, to arrest an individual without a warrant, the police officers need more than reasonable suspicion. In general, a warrantless arrest is unreasonable unless it falls within an exception set out in the code of criminal procedure and there was probable cause

---

be stretched to include transporting an individual to jail against his will. The handcuffing and transportation of an individual to jail has to mean that the individual was arrested no matter what statements the officers may make. If this type of activity were labeled a detention, police officers would be entitled to effectively arrest an individual despite having no probable cause to believe that the individual had committed a crime so long as the officers had reasonable suspicion to believe that the individual was or had been engaged in criminal conduct—the lower standard used to determine whether a temporary detention was justified. *See Glazner v. State*, 175 S.W.3d 262, 266 (Tex. Crim. App. 2005) (noting that detention was proper because officer had reasonable suspicion to believe individual was or had been engaged in criminal activities). We will not endorse such an argument, nor will we equate detention with arrest. Rather, we continue to hold that police officers must have probable cause to make a warrantless arrest of an individual.

In this case, the appellant did not ask the police to remove him from the scene of the accident and take him to jail. Moreover, on the way to the jail, the appellant informed Simpson that the appellant's house was close by, stated that all he wanted to do was go home and go to bed, and questioned the necessity of going to the jail. In light of these statements, there can be no argument that the appellant was merely being detained rather than arrested because a reasonable person would have concluded that his freedom of movement was being restricted by the same level associated with a formal arrest.

8

to arrest the individual in question.  *Torres v. State*, 182 S.W.3d 899, 901-02 (Tex. Crim. App. 2005); *see* Tex. Code Crim. Proc. Ann. arts. 14.01-.04 (West 2005 & Supp. 2006) (listing exceptions to warrant requirement).

In determining whether there was probable cause justifying an arrest, courts must look to the totality of the circumstances.  *Torres*, 182 S.W.3d at 902.  Probable cause exists if the officer has a reasonable belief that an offense has been committed and that belief is based on facts and circumstances that are within the officer's personal knowledge or about which the officer has reasonably trustworthy information.  *See id.*; *State v. Ballard*, 987 S.W.2d 889, 892 (Tex. Crim. App. 1999) (explaining that probable cause exists if officer has reasonably trustworthy information sufficient to warrant reasonable person to believe that particular person has committed criminal offense).  But a mere suspicion, an officer's unarticulated hunch, or the good faith of the arresting officer does not constitute probable cause to support a warrantless arrest.  *See Torres*, 182 S.W.3d at 902.  Although the words used in both standards are similar, probable cause requires a higher level of suspicion than reasonable suspicion.  *See Coleman v. State*, 188 S.W.3d 708, 718 (Tex. App.—Tyler 2005, pet. ref'd); *see also United States v. Sokolow*, 490 U.S. 1, 7 (1989) (noting that police officers may stop and briefly detain person for investigative purposes if officers have reasonable suspicion that criminal activity may be occurring, even if officers lack probable cause).

For the reasons that follow, we conclude that the appellant's arrest was not supported by probable cause.  During the trial, Simpson testified that his suspicion that the appellant was intoxicated at the time of the accident was based on the facts that the appellant was involved in a single-car collision, smelled like alcohol, and dropped his wallet.  The smell of alcohol and the discovery of beer cans in and around the vehicle is evidence that the appellant had consumed

9

alcoholic beverages, but without more, it is not evidence that the appellant was legally intoxicated. Furthermore, at the time of his arrest, the appellant had not taken nor failed any field sobriety tests. *See Nottingham v. State*, 908 S.W.2d 585, 588 (Tex. App.—Austin 1995, no pet.) (holding that probable cause existed to support arrest because Nottingham smelled like alcohol, admitted to drinking, and failed horizontal-gaze-nystagmus field sobriety test). Moreover, with the exception of the appellant either dropping his wallet or the items in his wallet, Simpson testified that the appellant did not display any signs of being intoxicated. In fact, Simpson testified that the appellant did not slur his speech and that his ability to walk was not impaired. *See Carrasco v. State*, 712 S.W.2d 120, 121-22 (Tex. Crim. App. 1986) (holding that probable cause to arrest Carrasco existed when she was involved in single-car accident; her eyes appeared glassy; her speech was slow, deliberate, and slurred; and her movement was impaired). Finally, the fact that the appellant either dropped his wallet or some of the items in his wallet when asked to retrieve his insurance information is not enough to justify his arrest, even when considered along with the smell of alcohol and the fact that it was a single-car accident, when the appellant's action is considered in light of the fact that he had just been involved in a roll-over accident and had injured his hand during the accident. Although the factors testified to by Officer Simpson may have supported a finding of reasonable suspicion for further investigation into the circumstances surrounding the accident, they do not satisfy the heightened standards required to find probable cause. Because Simpson did not have probable cause to believe that the appellant was intoxicated, the arrest was unlawful.

Because we have concluded that the appellant's arrest at the scene of the accident was not supported by probable cause, we hold that the trial court erred in admitting the evidence of the appellant's field sobriety tests and breath results. *See* Tex. Code Crim. Proc. Ann. art. 38.23

10

(West 2005) (mandating that "[n]o evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case"). Therefore, we sustain the appellant's first issue on appeal.

In his second issue on appeal, the appellant contends that the trial court erred by denying his proposed jury charge. However, because we sustained the appellant's first issue on appeal, we need not address this issue.

## CONCLUSION

Having sustained the appellant's first issue on appeal, we reverse the judgment of the trial court and remand the case for proceedings consistent with this opinion.

---

David Puryear, Justice

Before Chief Justice Law, Justices Puryear and Henson

Reversed and Remanded

Filed: August 23, 2007

Do Not Publish

11