NUMBER 13-04-144-CR

 

                         COURT OF APPEALS

 

               THIRTEENTH DISTRICT OF TEXAS

 

                  CORPUS
 CHRISTI - EDINBURG

 

 



ERIC PEREZ,                                                           Appellant,

 

                                           v.

 

THE
STATE OF TEXAS,                                              Appellee.

 



 

             On appeal from the County
Court at Law No. 1

                           of Nueces
 County, Texas.

 



 

                     MEMORANDUM OPINION[1]

 

              Before Justices Rodriguez,
Castillo, and Garza

                  Memorandum Opinion by Justice Castillo

 








Appellant, Eric Ben Perez, was charged with the
misdemeanor offense of  possession of
less than two ounces of marihuana.[2]  The trial court denied his motion to suppress
evidence,[3]
and he pleaded guilty to the offense.[4]  The trial court assessed punishment at thirty
days' confinement in the county jail and a $1,000 fine.  In his sole issue presented, Perez contends
the trial court erred in denying his motion to suppress.  We affirm.

I.  FACTS

Deputy Constable
Hector Garcia testified that, at approximately 9:00 p.m. on March 12, 2003, he
was traveling at about five miles per hour when he noticed a vehicle
approaching an intersection.[5]  At the time, deputy Garcia was en route to
serve a civil document.[6]  The police unit window was down.  As the other vehicle approached the
intersection traveling on the same street, deputy Garcia noticed smoke coming
out of the interior of the car that "smelled like marihuana."  He made a U-turn and stopped the
vehicle.  Deputy Garcia further testified
on direct examination:








  I approached
the vehicle and asked for his driver's license and insurance.  And after that, I still smelled the strong
odor of marihuana coming from inside the vehicle.  I asked the driver if he . . . had been
smoking, and his answer was, "Yes." 
So at that time, I asked him to step out of the vehicle.  We went [toward] the rear of the car, and I
asked him to place his hands on top of the car. 
I patted him down for weapons. 
When I went down [toward] the front, I felt a bulge.  I asked him what this was.  He said he had some buds with him.  And I picked up his shorts because they were
kind of loose and baggy.  And when I did
that, that's when the plastic baggy with the green, leafy substance dropped to
the ground.  

On direct examination
by the prosecutor, deputy Garcia testified as follows:

 

Q: 
Okay.  And were you able to
identify that as marihuana?

 

A:  When I
picked it up, yes.

 

Q: 
Okay.  When you stopped the
Defendant, Eric Perez, did you tell him why you had stopped him?

 

A:  I told
him that it was, you know, some marihuana coming from his car, and that's why I
initially stopped him for.

 

Q:  Did he
make any statements in response to that?

 

A: 
No.  He was justByou could tell his
eyes were bloodshot, and he was just relaxed andBlike he's been through it before.

 

Deputy
Garcia testified that, when the vehicle stopped, the smell of marihuana
emanated from the vehicle.








In his appellate
brief, Perez points to contrary documentary evidence:  (1) in the original field report the deputy
recorded he saw Perez smoking marihuana; (2) in the offense report the deputy
recorded that he smelled marihuana emanating from the vehicle; and (3) the
deputy did not state in either report that he smelled marihuana when he stopped
Perez's vehicle.  On the defense's
motion, the trial court admitted both reports in evidence.  Deputy Garcia admitted he could not explain
the differences.  The following ensued on
cross-examination of deputy Garcia:

Q:  Okay. 
And is it your standard procedure when you make a stop to do a pat-down
frisk for officer safety?

 

A:  Not the procedure there, but there [were]
three subjects in the vehicle; and just for my safety, that's what I did. . . .
I believe[d] that at the time that there was some kind of weapons or narcotics
there in that vehicle.  

 

Q:  So you might have been patting him down for
narcotics as well?

 

A:  I patted him down for weapons.  That's what I did.

 

Deputy Garcia testified that Perez was
cooperative.  He further testified upon 

 

questioning by the prosecutor:

 

Q:  Based on your training and experience, are
you allowed to make a traffic stop based on the smell of burnt marihuana alone?

 

A:  Yes.

 

Q:  Based on your training and experience, are
you allowed to search a motor vehicle based on the smell of burnt marihuana
alone?

 

A:  Yes.

 

Q:  And it's your testimony today that you did
smell the odor of burnt marihuana?

 

A:  Yes, I did; and yes, it is.

 

Q: . . .  Does your report state that you smelled the
odor of burnt marihuana coming from the Defendant's vehicle?

 

A:  Yes, it does.

 

Q:  Can you read that sentence to us?

 








A:  It
says, "While I passed the vehicle, a strong odor of marihuana smoke was coming
from inside the vehicle.  I made a U-turn
. . . to traffic stop this vehicle. . . ."

          

The trial court denied
the motion to suppress.

 

II.  ISSUE PRESENTED

Perez contends that the
trial court should have suppressed the evidence seized during a pat-down search
because the officer conducting the search was not motivated by a reasonable
safety concern.  The State counters that
deputy Garcia was authorized to search Perez incident to his arrest.  

III.  BURDENS OF PROOF AND
STANDARD OF REVIEW

A.  Burdens of Proof








A motion to suppress
is a specialized objection to the admissibility of evidence.  Morrison v. State, 71 S.W.3d 821, 826
(Tex. App.BCorpus Christi 2002,
no pet.) (citing Galitz v. State, 617 S.W.2d 949, 952 n.10 (Tex.
Crim. App. 1981) (op. on reh'g) (en banc)).  An accused seeking to suppress evidence on
the basis of illegal police conduct bears the burden of proof to rebut a
presumption of proper police conduct.  See
McGee v. State, 105 S.W.3d 609, 613 (Tex. Crim. App. 2003).  The accused satisfies the burden by proving
the police acted without a warrant.  Id.  The burden then shifts to the State to either
produce a warrant or prove the reasonableness of the challenged conduct.  Id. 
If the State produces a warrant, the burden of proof again shifts to the
accused to show the invalidity of the warrant. 
Russell v. State, 717 S.W.2d 7, 9‑10 (Tex. Crim. App.
1986) (op. on reh'g).  If the State is
unable to produce a warrant, it must prove the reasonableness of the search or
seizure.  Id.  The State may demonstrate reasonableness by
proving probable cause.  See McGee,
105 S.W.3d at 613 (noting that State meets burden in suppression
hearing by proving one of statutory exceptions to warrant requirement).  The State must prove probable cause by a
preponderance of the evidence.  Porter
v. State, 938 S.W.2d 725, 727-28 (Tex. App.BHouston [1st Dist.] 1996, pet. ref'd). 

                                                         B.  Standard of Review








At a suppression hearing, the trial court is the
sole finder of fact.  Arnold v. State,
873 S.W.2d 27, 34 (Tex. Crim. App. 1993); Wyatt v. State, 23 S.W.3d 18,
23 (Tex. Crim. App. 2000).  The trial
court is free to believe or disbelieve any or all parts of a witness's
testimony.  Dewberry v. State, 4
S.W.3d 735, 747 (Tex. Crim. App. 1999) (en banc); Romero v. State, 800
S.W.2d 539, 543 (Tex. Crim. App. 1990) (en banc).  Thus, in reviewing a trial court's ruling on
a motion to suppress, we give almost total deference to the trial court's
determination of historical facts and application-of-law-to-fact questions that
turn on credibility and demeanor.  Perales
v. State, 117 S.W.3d 434, 437 (Tex. App.BCorpus
Christi 2003, pet. ref'd); Morrison, 71 S.W.3d at 827 (citing Guzman
v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997) (en banc)).[7]  We review de novo application-of-law-to-fact
questions that do not turn on credibility and demeanor.  Morrison, 71 S.W.3d at 827
(citing Guzman, 955 S.W.2d at 89). 
When the trial court does not make explicit findings of historical
facts, we review the evidence in the light most favorable to the trial court's
ruling.  Morrison, 71 S.W.3d
at 827 (citing Walter v. State, 28 S.W.3d 538, 540 (Tex. Crim. App.
2000)).  In the absence of explicit fact findings,
we assume that the trial court's ruling is based on implicit fact findings
supported in the record.  Perales,
117 S.W.3d
at 437; see Carmouche v. State, 10 S.W.3d 323,
332 (Tex. Crim. App. 2000) (recognizing implicit fact findings); State v.
Ross, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000) (en banc). 
We then review de novo whether the facts, express or implied, are
sufficient to provide legal justification for admitting the complained-of
evidence.  See Morrison, 71 S.W.3d
at 827 (citing Garcia v. State, 43 S.W.3d 527, 530 (Tex. Crim.
App. 2001)).    

We uphold a trial court's ruling on a suppression
motion if it is reasonably supported by the record and is correct on any theory
of law applicable to the case. Villarreal v. State, 935 S.W.2d 134, 138
(Tex. Crim. App. 1996) (en banc); Perales, 117 S.W.3d at 438.  This is true even if the decision is correct
for reasons different from those espoused by the trial court.  Romero, 800 S.W.2d at 543. 

IV.  DISCUSSION








Stopping an automobile and detaining its occupants
is a "seizure" within the meaning of the Fourth Amendment.  Morrison, 71 S.W.3d at 827 (and
cited cases).  No evidence obtained
from an officer in violation of any provisions of the federal or State
Constitution or laws shall be admitted in evidence against the accused on the
trial of any criminal case.  See Tex. Code Crim. Proc. Ann. art.
38.23(a) (Vernon 2005).  A peace officer
may arrest an offender without a warrant for any offense committed in his
presence or within his view.  Id.
_ 14.01(b) (Vernon 2005); Pierce v.
State, 32 S.W.3d 247, 248 n.1 (Tex. Crim. App. 2000) (en banc). 








It is undisputed that
the deputy did not have a warrant to arrest Perez or search his person.  Thus, it was the State's burden at the suppression
hearing to show by a preponderance of the evidence that the arresting officer
had at least a reasonable suspicion that Perez either had committed an offense
or was about to do so before he stopped Perez.  See McGee, 105 S.W.3d at 613; see also
Russell, 717 S.W.2d at 9‑10.  Giving almost total deference to the trial
court in determining the historical facts, we believe those facts to be that
the deputy observed Perez in close proximity, while the officer was traveling
about five miles per hour in a residential neighborhood and while Perez was
slowly approaching a stop sign.  The
driver's side window of both vehicles was open. 
The deputy observed smoke emanating from Perez's vehicle, and, as their
vehicles passed each other in opposite directions, he smelled burnt marihuana
emanating from Perez's vehicle.  The question then becomes whether these facts, when
viewed de novo, are sufficient to establish a violation of the law.[8]  See Morrison, 71 S.W.3d
at 828.  

Perez points to
contrary evidence that the deputy's reports did not comport with his testimony
during the suppression hearing.  Thus, he
argues, the articulated reason to stop, the smell of marihuana, is not
supported in the appellate record.  Perez
further argues that, even if the deputy lawfully stopped and detained Perez,
the subsequent pat-down search for weapons was unlawful because the deputy did
not provide any articulable facts that would serve as a basis for a safety
concern.  The State counters that the
deputy's subjective intent to conduct a pat-down search for weapons is
immaterial because, viewed objectively, the facts show no Fourth Amendment
violation.[9]  













Viewed in the light
most favorable to the trial court's ruling and with appropriate deference to
the trial court's implied credibility determinations, the evidence shows that
deputy Garcia witnessed a penal offense when he (1) observed smoke emanating
from a vehicle in close proximity, (2) smelled the odor of burnt marihuana
emanating from the same vehicle, (3) heard Perez admit that he had been
smoking, (4) heard Perez admit that he had "some buds" with him, (5)
saw a plastic baggy with a green, leafy substance drop to the ground beneath
Perez.  Deputy Garcia provided sufficient
objective facts to demonstrate that Perez was committing a controlled substance
offense, possession or use of marihuana, in his view and presence.  On
these facts, deputy Garcia was authorized to arrest Perez without
a warrant for any offense committed in the officer's presence or view.  See Tex.
Code Crim. Proc. Ann. art. 14.01(b) (Vernon 2005); Pierce,
32 S.W.3d at 248 n.1; McGee, 105 S.W.3d at 614; Stull v. State,
772 S.W.2d 449, 451 (Tex. Crim. App. 1989) (en banc) ("The test for probable
cause is [w]hether at that moment the facts and circumstances within the
officer's knowledge and of which [he] had reasonably trustworthy information
were sufficient to warrant a prudent man in believing that the [arrested
person] had committed or was committing an offense.").  The privacy interests of a person who has
been lawfully arrested must yield, for a reasonable time and to a reasonable
extent, to permit the police to search for weapons, means of escape, and
evidence.  Oles v. State, 993 S.W.2d
103, 107 (Tex. Crim. App. 1999).  It is
irrelevant that the arrest occurs immediately before or after the search, as
long as sufficient probable cause exists for the officer to arrest before the
search.  Williams v. State,
726 S.W.2d 99, 101 (Tex. Crim. App. 1986) (en banc) (citing Rawlings
v. Kentucky, 448 U.S. 98, 111 (1980)). 
We conclude that the deputy's search was a search incident to a lawful
arrest.  See McGee,
105 S.W.3d at 615; see also Villarreal, 935 S.W.2d at 138
(holding that trial court's ruling may be upheld on any theory applicable to
case); Romero, 800 S.W.2d at 543 (noting that trial court's ruling may
be upheld on any theory applicable to case even if decision is correct for
reasons different from those espoused by trial court).  Accordingly, we conclude that the marihuana
was not the product of an illegal search. 
See McGee, 105 S.W.3d at 615. 

V.  CONCLUSION

We overrule Perez's sole issue.  We affirm the trial court's order denying the
motion to suppress.

ERRLINDA CASTILLO

Justice

 

Do not publish.

Tex. R. App. P. 47.2(b).

 

Memorandum Opinion delivered and filed

this 28th day of July, 2005.

 











[1] See
Tex. R. App. P. 47.2, 47.4.





[2] Tex.
Health & Safety Code
Ann. ' 481.121 (Vernon 2003).





[3]
Perez filed a motion to
suppress evidence obtained through the arresting officer's search based, in
part, on violations of the Fourth Amendment and Texas Code of Criminal
Procedure article 38.23.  Tex. Code Crim. Proc. Ann. art. 38.23 (Vernon 2005).





[4]
Perez reserved his right to appeal the denial of his motion to suppress.  The trial court has certified that this is a
plea bargain case but matters were raised by written motion filed and ruled on
before trial and not withdrawn or waived, and Perez has the right of
appeal.  See Tex. R. App. P. 25.2(A), (B).  





[5]
Deputy Garcia testified that the vehicle and his unit were "pretty
close" to each other.  The other
vehicle was approaching a stop sign at a slow pace.  





[6] He
testified that the policy of the department is to stop service of civil
documents at 9:45 p.m.





[7]
Under Guzman, the relevant standard of review depends on the type of
question presented. Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App.
1997) (en banc).  We must afford almost
total deference to the trial court's determination of the historical facts that
are supported by the record, especially where the determination is based on an
evaluation of credibility and demeanor.  Id.  We also afford almost total deference to the
trial court's application of the law to the facts, where the application turns
on an evaluation of credibility and demeanor. 
Id.  Where the application
of the law to the facts does not revolve around an evaluation of credibility
and demeanor, we review the issue de novo. 
Id.  However, in such a
case we still afford deference to the trial court's determination of the
subsidiary fact questions.  Id.





[8] The
only evidence before the trial court was the testimony of the arresting
officer.  Most reviews of motion to
suppress cases will be under a bifurcated standard, in which the historical
determination made by the trial court will be accorded total deference while
the application of the law to the facts will be analyzed under a de novo
standard of review.  State v. Ross,
32 S.W.3d 853, 856 (Tex. Crim. App. 2000). 
Where there is uncontroverted evidence and there is no evidence that the
trial court disbelieved the testimony, de novo review is appropriate.  Id. at 858.  Even where the evidence is controverted and
thus credibility and demeanor are factors, if the issue to be decided does not
turn on credibility or demeanor, a de novo standard applies to the review of
the application of law to facts.  Loserth
v. State, 963 S.W.2d 770, 772-73 (Tex. Crim. App. 1998).   





[9]
Whether a Fourth Amendment violation has occurred "turns on an objective
assessment of the officer's actions in light of the facts and circumstances
confronting him at the time, and not on the officer's actual state of mind at
the time the challenged action was taken."  O'Hara v. State, 27 S.W.3d 548, 551 (Tex.
Crim. App. 2000) (citing Maryland v. Macon, 472 U.S. 463, 470‑71
(1985)).  The officer need not be
absolutely certain that the individual is armed.  Id. 
The issue is whether a reasonably prudent person would justifiably
believe that his safety or that of others was in danger.  Id.